[No. 32942-5-II.   Division Two.   March 14, 2006.]

RICHARD ASCHE ET AL., *Appellants*, v. MELANY BLOOMQUIST
ET AL., *Respondents*.

*David P. Horton* (of *Law Office of David P. Horton, Inc., P.S.*), for appellants.

*Jennifer Anne Irvine Forbes* (of *McGavick Graves, P.S.*) and *Charles K. Wiggins* (of *Wiggins & Masters, P.L.L.C.*), for respondents.

¶1 BRIDGEWATER, J. — Richard and Helen Asche appeal the dismissal of their nuisance and mandamus actions for failure to state a claim. But at oral argument, the Asches confirmed they have abandoned their mandamus claim. We hold that their failure to file a land use petition within 21 days of the issuance of the building permit as required by RCW 36.70C.040 is determinative. Thus, their claims for nuisance, either public or private, fail, and their due process actions fail because they did not properly file under the Land Use Petition Act (LUPA), chapter 36.70C RCW. We affirm.

¶2 On February 3, 2005, Richard and Helen Asche (Asches) filed a complaint for injunctive relief based on public nuisance and a writ of mandamus against Melany Bloomquist and Steven Chobot (Bloomquists), Cindy Baker as director of the Kitsap County Department of Community Development, and Kitsap County (County). On February 8, 2005, the Asches amended the complaint to include a private nuisance claim. They wished to stop the Bloomquists from building a house on the Bloomquists' property and to compel the County to issue a stop-work order. In the alternative, they sought damages for losing their Mount Rainier view.

¶3 The amended complaint alleged that the Bloomquists owned adjoining property to the Asches and had been granted a building permit on September 9, 2004. It further alleged that the Asches did not have notice of the building permit or notice that the new building would adversely impact

their view until after they contacted the builder who had just completed the garage portion of the building on December 6, 2004. The complaint further alleged that when they contacted the County, the County told them not to hire an attorney and that the County would "handle it" without an attorney. Thus, the Asches did not file an action until February, two months after learning their view would be impacted and roughly five months after the building permit issued.

¶4 The Bloomquists' lot is rectangular with a 40-foot-wide neck of land extending up a hill. The County calculates the maximum allowable height under the applicable zoning ordinance as the midslope of the property's buildable area. KITSAP COUNTY CODE (KCC) 17.321C.040. In this case, although no building could be built on the 40-foot neck, the County included that portion in its calculation. The result was that the maximum ridgeline was 221 feet.[1]

¶5 The Asches argued that the building permit was erroneous because the County misapplied the zoning ordinance and miscalculated the maximum allowable height of the structure. Excluding that neck, the Asches contend that the allowable building height is nine feet lower than the County approved.

¶6 On February 18, 2005, the trial court heard the Bloomquists' and the County's CR 12(b)(6) motions to dismiss the Asches' claims as barred by LUPA's 21-day statute of limitations for judicial review. RCW 36.70C.040. The court agreed with the defendants and dismissed all of the Asches' claims. The Asches appealed but have abandoned their claim for mandamus against Kitsap County.

¶7 We review CR 12(b)(6) dismissals de novo. *Reid v. Pierce County*, 136 Wn.2d 195, 200-01, 961 P.2d 333 (1998). Dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107,

---

[1] This is presumably 221 feet in elevation as measured from the water.

120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting *Bowman v. John Doe*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). We must also accept the allegations in the complaint and any reasonable inferences as true. *Reid*, 136 Wn.2d at 201.

## I. LUPA's Applicability to the Bloomquists' Permit

¶8 The Asches argue on appeal that LUPA does not apply to their suit because they lack standing under it. Specifically, they argue that they are not "aggrieved" parties under the statute and therefore cannot invoke the statute's remedy provisions. Br. of Appellant at 10. They also argue that the exceptions in LUPA for a suit for monetary damages apply.

■■ ¶9 We review questions of statutory construction de novo. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). We look to the statute's plain language in order to fulfill our obligation and to give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994).

■ ¶10 Initially, we note that LUPA applies to the issuance of this building permit because the building permit was a land use decision. LUPA is the exclusive means of judicial review of land use decisions. RCW 36.70C.030. Land use decisions are defined in the statute to be a "final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination" on:

> (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used . . . .
>
> (b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances

or rules regulating the improvement, development, modification, maintenance, or use of real property; and

(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. . . .

RCW 36.70C.020(1). In *Samuel's Furniture, Inc. v. Department of Ecology*, 147 Wn.2d 440, 453, 54 P.3d 1194 (2002), the Washington Supreme Court noted that a grading building permit was a final determination for purposes of LUPA. The court has also specifically noted that "[b]*uilding permits* are subject to judicial review under LUPA." *Chelan County v. Nykreim*, 146 Wn.2d 904, 929, 52 P.3d 1 (2002).

¶11 Here, the KCC provides that the director of the Kitsap County Department of Community Development is the authority for issuing building permits. KCC 21-.04.120(A), .030.[2] The building permit is not in our record, but presumably, it was issued by the director and therefore represents the local jurisdiction's final determination regarding this piece of property.[3] Given that LUPA applies to interpretative decisions regarding application of zoning ordinances to specific property, RCW 36.70C.020(1)(b), it does not matter whether the Asches are challenging the validity of the permit or the interpretation of the County zoning ordinance as applied to this piece of property. LUPA covers both.

¶12 Nonetheless, the Asches argue that LUPA does not apply because they do not have standing under that statute. With some exceptions, LUPA is the exclusive means of obtaining judicial review of land use decisions. RCW 36.70C.030(1). Specifically, LUPA does not apply to state agency decisions, to writs of mandamus or prohibition, or to

---

[2] The code provides that the director reviews Type I decisions as the final authority, and the parties agree that building permits appear to be Type I decisions. This statute actually exempts building permits from Type classifications, so it is unclear what procedure actually does apply. The statute does indicate that, in any case, the director is the reviewing authority. And KCC 17.455.010 seems to give the director the authority to interpret and apply provisions of the zoning code.

[3] In any case, the Asches do not argue that the building permit was not a final determination.

actions for monetary damages. RCW 36.70C.030(1)(a)-(c). LUPA's stated purpose is to "provide consistent, predictable, and timely judicial review" of land use decisions. RCW 36.70C.010.

■ ■ ¶13 LUPA's standing provisions allow a "person aggrieved or adversely affected by the land use decision" to bring a petition. RCW 36.70C.060(2). The statute then defines that person as aggrieved when all of these conditions are met:

(a) The land use decision has prejudiced or is likely to prejudice that person;

(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision; ·

(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060(2). Our Supreme Court has interpreted these requirements to be similar to the Administrative Procedure Act, chapter 34.05 RCW, standing provisions, which require an injury in fact and apply a zone of interest test. *Nykreim*, 146 Wn.2d at 937. The zone of interest test focuses on whether the ordinance intended that agency to protect the party's interest and is not intended to be especially demanding. *Nykreim*, 146 Wn.2d at 937.

¶14 Here, the first element, that the land use decision prejudiced the Asches, is met. They lost their view of Mount Rainier when the Bloomquists began building their house under the permit's authority. The last element is also met. The KCC provisions do not specify an appeal process for building permits. KCC 21.04.030. The closest analogous code provisions indicate that an applicant can appeal ministerial decisions, but it does not provide for appeals by neighbors. KCC 21.04.060. Accordingly, there was no administrative process for the Asches to exhaust.

¶15 The Asches contend, however, that LUPA can provide no judgment in their favor that would redress their loss of view because LUPA does not provide injunctive relief. The County responds that LUPA allows a stay of the action pending review and that a reversal still provides the same relief as an injunction via a nuisance claim. The County's position is correct.

¶16 The statute requires that the Asches be able to substantially eliminate or redress their prejudice. RCW 36-.70C.060(2)(c). As the County points out, however, LUPA does allow a court to issue a stay pending the outcome of the proceedings. RCW 36.70C.100. And if the superior court reverses the decision, LUPA allows the court the power to "make such an order as it finds necessary to preserve the interests of the parties and the public." RCW 36.70C.140. With this authority, the trial court could have redressed the Asches' injury. Moreover, had the permit been reversed, the County would have the power to impose penalties or bring an injunction action to enforce its zoning ordinances. KCC 17.530.020, .030. Accordingly, had the Asches properly filed a petition under LUPA, they would have been able to re-dress the injury to their view by stopping construction.

¶17 The heart of the Asches' argument, however, is that the County did not consider their interests in issuing the building permit. According to LUPA, a person's inter-ests must be "among those that the local jurisdiction was required to consider when it made the land use decision." RCW 36.70C.060(2)(b). The Bloomquists and the County, on the other hand, argue that the zoning ordinance requires a consideration of existing views from adjacent properties and therefore the County did have to consider the Asches' interests before it issued the permit.

¶18 The plain meaning of the LUPA standing provision is that to have standing, the local jurisdiction, here, the director of the Kitsap County Department of Community Develop-ment, must be obligated to consider the Asches' interests for them to have standing under LUPA. RCW 36.70C.060(2)(b). *Webster's Dictionary* defines the term "require" as to "impose

a compulsion or command . . . to do something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (1969). The court's inquiry, then, is not whether the director actually considered the Asches' interests, but whether she was under an obligation to do so.

¶19 The County concedes, and we agree, that the County had to consider the Asches' interests. This ordinance requires that buildings between 28 and 35 feet in height can be approved only if the views of adjacent properties, such as that of the Asches, are considered. KCC 17.321C.040. The code provides:

> Properties within the View Protection Overlay Zone may build as high as 35 feet under the following circumstances:
>
> 1. There is no existing view of downtown Seattle, the Cascade Mountains, Mt. Rainier or the Puget Sound from the subject property or any adjacent property; or
>
> 2. The owners of all adjacent properties approve the building height prior to building permit issuance; or
>
> 3. It can be explicitly shown that the structure will not cause the blockage of existing views from any of the adjacent properties.

KCC 17.321C.040. The Asches are alleging that the County miscalculated the height of the building and that, if measured correctly, the building is over 28 feet high. Accordingly, the Asches are contending that the Bloomquists' house falls within the statutory provisions requiring that their view not be impacted. Accordingly, the director was obligated to consider their interests.

¶20 This result is in line with LUPA's purposes. The court indicated in *Nykreim* that LUPA's language requiring the local authority to consider a petitioner's interests was not intended to be " 'especially demanding.' " *Nykreim,* 146 Wn.2d at 937 (quoting *Seattle Bldg. & Constr. Trades Council v. State Apprenticeship & Training Council*, 129 Wn.2d 787, 797, 920 P.2d 581 (1996), *cert. denied*, 520 U.S. 1210 (1997)). In *Nykreim*, the court indicated that the appropriate inquiry was whether the ordinance was in-

tended to protect the petitioner's interests. *Nykreim*, 146 Wn.2d at 937.

¶21 Here, the zoning ordinance was intended to protect the views of Manchester Village residents by "restricting the height of new residential construction." Manchester Community Plan at 12-13 (Br. of Appellant, App. C). To adopt the Asches' interpretation would be to rob Manchester Village residents of the ability to challenge the issuance of any building permit for houses over 28 feet tall other than by a nuisance action and would not advance LUPA's goal of providing predictable, consistent, and timely review of land use decisions. RCW 36.70C.010. Therefore, we hold that the zoning ordinance was specifically passed to protect the views of property owners within this particular zone and that is sufficient to grant standing to the Asches.

## II. LUPA's Statute of Limitations

¶22 To serve the purpose of timely review, LUPA provides stringent deadlines, requiring that a petitioner file a petition for review within 21 days of the date of the land use decision. RCW 36.70C.040(3). The date on which a land use decision is issued is defined in the statute as three days after a written decision is mailed; the date on which the county provides notice that a written decision is available; the date of an ordinance or resolution; or, if none of these apply, on the date the decision is entered into the public record. RCW 36.70C.040(4). As the Asches concede, their petition was filed more than 21 days after the building permit was issued. If their suit falls within LUPA, the trial court properly determined that the Asches were time-barred from challenging the validity of the permit.

¶23 The Supreme Court's decision in *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 120 P.3d 56 (2005), is determinative. There, the court determined that even illegal decisions under local land use codes must be challenged under LUPA in a timely, appropriate manner. *Habitat Watch*, 155 Wn.2d at 407. This includes defects in land

use determinations that would have made the decision void under pre-LUPA cases. *Habitat Watch*, 155 Wn.2d at 407. Accordingly, the court held that LUPA's 21-day limitation on challenges applied. *Habitat Watch*, 155 Wn.2d at 409.

¶24 The court next addressed when the 21-day period began running. *Habitat Watch*, 155 Wn.2d at 408. The statute begins running on the date that a land use decision is issued. RCW 36.70C.040(2)-(4). The court determined that the land use decision was "issued" on the day the decision was mailed or notice was given that the decisions were publicly available. *Habitat Watch*, 155 Wn.2d at 408 n.5.

¶25 There is no dispute in the instant case as to when the land use decision was issued—it was September 9, 2004; the Asches' complaint was filed February 3, 2005. That was well beyond the 21-day limit provided by statute.[4] To the extent that the Asches' claim depends on challenging the validity of a land use decision, the trial court did not err in granting the CR 12(b)(6) motion; the Asches were barred because they failed to file their action within 21 days after the land use decision was issued.

### III. Due Process

¶26 The Asches next assert that if LUPA bars their challenge to the Bloomquists' building permit, then LUPA, as applied here, violated their procedural due process rights because they had no notice of the building permit's issuance. Neither LUPA nor the KCC zoning ordinance requires the County to provide notice of a building permit to neighbors.

¶27 Before we can address the Asches' due process argument, we must determine what right the Asches are asserting is harmed. The Asches' amended complaint alleges that the Bloomquists' house blocks their view of Mount

---

[4] In *Habitat Watch*, the record was unclear as to when the decision was entered into the public record. *Habitat Watch*, 155 Wn.2d at 409. We do not have that dilemma; the parties agree that the decision was issued on September 9, 2004.

Rainier and that it violates the Manchester Village height regulations. KCC 17.321C.040.

¶28 Initially, the Asches do not have a common law property right in the view across their neighbor's property. *Collinson v. John L. Scott, Inc.*, 55 Wn. App. 481, 485, 778 P.2d 534 (1989). The *Collinson* court rejected the nuisance claims of a property owner who had bought property on Capitol Hill in Seattle because of its view and denied an injunction against a multistory apartment building. *Collinson*, 55 Wn. App. at 488.

¶29 The Asches may, however, have a property right under the applicable zoning ordinance. This conclusion requires us to interpret the KCC zoning ordinance covering Manchester Village. We review questions of law, including statutory construction, de novo. *City of Pasco*, 119 Wn.2d at 507. We give considerable deference to the agency charged with enforcing an ordinance where the ordinance is ambiguous, but we are not bound by its interpretation. *Hoberg v. City of Bellevue*, 76 Wn. App. 357, 359-60, 884 P.2d 1339 (1994).

¶30 A property right is protected by the United States Constitution when an individual has a reasonable expectation of entitlement deriving from existing rules that stem from an independent source such as state law. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). In determining that there was no common law right to a view, the *Collinson* court relied on a 1908 Washington State Supreme Court case that held that a person may build a structure as high as he wants on his own property without liability for nuisance to a neighbor even if the structure completely blocked the neighbor's light and air. *Karasek v. Peier*, 22 Wash. 419, 427, 61 P. 33 (1900). But where the neighbor had rights conferred by statute, a neighbor could enforce those rights in a nuisance action. *Karasek*, 22 Wash. at 428.[5] And a zoning ordinance can create

---

[5] Although we recognize that *Karasek* is a pre-LUPA case, the Asches could enforce their right with a timely land use petition. Therefore, *Karasek*'s reasoning remains compelling.

a property right. *Veradale Valley Citizens' Planning Comm. v. Bd. of County Comm'rs*, 22 Wn. App. 229, 232, 588 P.2d 750 (1978) (reasoning that a favorable zoning decision creates a property right that triggers procedural due process).

¶31 Under the County's zoning ordinance at issue here, the Bloomquists may build up to 28 feet without objection from the Asches. An applicant is entitled to a building permit as a matter of right once the relevant ordinance provisions are met; issuance of a permit is a purely ministerial act. *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 960, 954 P.2d 250 (1998). The applicable zoning ordinance here provides that a building inside the "View Protection Overlay Zone" may be built up to 28 feet and provides no other prerequisites. KCC 17.321C.040. Accordingly, the Asches have no right to prevent the erection of a 28 foot or shorter building under the zoning ordinance. But the plain language of this ordinance requires that buildings more than 28 feet and less than 35 feet high can be approved only if the views of adjacent properties, such as that of the Asches, are not impaired. Thus, the Asches have a property right, created by the zoning ordinance, in preventing the Bloomquists from building a structure over 28 feet in height. And, therefore, procedural due process applies.

¶32 Nonetheless, the Asches' due process argument fails. Our Supreme Court has established a bright-line rule in *Habitat Watch*; LUPA applies even when the litigant complains of lack of notice under the procedural due process clause. We note that Habitat Watch had been given notice and had participated in proceedings to oppose the special use permit. *Habitat Watch*, 155 Wn.2d at 402. Then, in two instances, Habitat Watch was not given notice required by the local ordinance and therefore did not have the opportunity to challenge the special use permit's extension. *Habitat Watch*, 155 Wn.2d at 403. The court held that despite the lack of notice, LUPA barred Habitat Watch's challenges. *Habitat Watch*, 155 Wn.2d at 401. The court stressed that

LUPA's "statute of limitations begins to run on the date a land use decision is issued," *Habitat Watch*, 155 Wn.2d at 408, and that "even illegal decisions must be challenged in a timely, appropriate manner." *Habitat Watch*, 155 Wn.2d at 407. Given that position, we are constrained to hold that the Asches' due process challenge fails. Having failed to file a land use petition within 21 days of the building permit's issuance, they have lost the right to challenge its validity.

## IV. Public Nuisance

¶33 The Asches next argue that even if LUPA does bar their challenge to the building permit, it would not bar their public nuisance or nuisance per se suit. They point to a provision in the KCC that provides that any structure in violation of the zoning ordinance is a public nuisance. KCC 17.530.030. In addition, the code provides that a permit issued in violation of the zoning ordinance is null and void. KCC 17.530.040. The Bloomquists argue that a valid building permit makes their structure lawful and therefore avoids these provisions of the KCC. The Bloomquists are correct.

¶34 The Asches' argument raises a preliminary issue as to whether LUPA preempts public nuisance actions. Because their particular claim depends on whether the building permit violated the zoning ordinance, we hold that LUPA precludes this public nuisance claim.

¶35 A nuisance is defined by statute as:

[U]nlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

RCW 7.48.120. A public nuisance is one that affects the entire community and a private nuisance is any other

nuisance. RCW 7.48.130, .150. Our Supreme Court has explained that an actionable nuisance is an act or omission that injures the plaintiffs' property or unreasonably interferes with their enjoyment of the property. *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998). The relief for a nuisance may be either damages or injunction. RCW 7.48.010 (indicating that a nuisance is "the subject of an action for damages and other and further relief"); 17 WILLIAM B. STOEBUCK & JOHN WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 10.3, at 664 (2004) (describing the two forms of remedies for nuisance as "damages and some kind of injunctive relief").

¶36 The Asches are correct to argue that LUPA does not bar all nuisance claims. Claims that do not depend on the validity of a land use decision are not barred. That LUPA allows such nuisance claims is confirmed by the Washington Supreme Court's recent decision in *Grundy v. Thurston County,* 155 Wn.2d 1, 117 P.3d 1089 (2005). There, the court determined that whether a land owner had a valid permit was irrelevant to the landowner's private nuisance action. *Grundy*, 155 Wn.2d at 8, 10. The court also noted that public nuisance claims are not foreclosed by possessing a permit to engage in an activity. *Grundy*, 155 Wn.2d at 7 n.5. As the court noted in *Tiegs*, "[t]he fact a governmental authority tolerates a nuisance is not a defense if the nuisance injures adjoining property." *Tiegs*, 135 Wn.2d at 15.

¶37 Moreover, LUPA specifically exempts from its coverage "[c]laims provided by any law for monetary damages or compensation." RCW 36.70C.030(1)(c). To the extent a nuisance claim may be construed as a claim for damages, LUPA would not seem to bar suit. And Washington recognizes that a plaintiff may elect to bring a land use petition to challenge a land use decision and a claim for damages. *Phillips v. King County*, 87 Wn. App. 468, 477, 943 P.2d 306 (1997), *aff'd*, 136 Wn.2d 946, 968 P.2d 871 (1998). When that occurs, the court will consider the claims separately. *Phillips*, 87 Wn. App. at 477.

¶38 While the Asches included a claim for damages in their private nuisance complaint, LUPA still precludes their public nuisance action. The Asches' public nuisance claim depends entirely upon finding the building permit violates the zoning ordinance. Specifically, they argue, "[b]ecause the project violates the zoning code, the project constitutes a public nuisance." Clerk's Papers at 10.

¶39 To find that the permit was invalid under this theory, we would have to find that the County's method for calculating the maximum allowable height for this building was incorrect. The County interpreted its statute to allow the 28 foot height to be calculated by averaging the height of all of the property except access easements. The permit issued complied with this interpretation. The Asches argue that the County erroneously included a 40-foot swath of land in its calculation and therefore the calculated height actually does violate the zoning ordinance. But this is precisely the kind of challenge LUPA envisions:

> An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property.

RCW 36.70C.020(1)(b). If we accept that the County's application of its zoning ordinance for this specific property was correct, the building permit is valid and not in contravention of the zoning ordinance. Therefore, under the Asches' public nuisance theory, it is not a nuisance.

¶40 Their public nuisance claims on this ground are barred by LUPA's 21-day statute of limitations because the Asches would need to have an interpretive decision regarding the application of a zoning ordinance to a specific property declared improper to prevail.

## V. Private Nuisance

¶41 The Asches also contend that a CR 12(b)(6) dismissal was inappropriate because their private nuisance claim should be allowed to continue. LUPA, even if applicable,

does not bar private nuisance claims. *Grundy*, 155 Wn.2d at 8, 10.

¶42 The Asches' private nuisance claim must, however, fail as a matter of law. The only injury alleged in the complaint is that the Bloomquists' house blocked their view of Mount Rainier. In Washington, however, a person has no property right in the view across their neighbor's land. *Collinson*, 55 Wn. App. at 485. The *Collinson* court noted that the general rule is that a structure is not a nuisance merely because it obstructs the view of neighboring property. *Collinson*, 55 Wn. App. at 485. Therefore, in this case, because the Asches complain only that the structure blocks their view, their private nuisance claim must fail.

## VI. Attorney Fees

¶43 *Habitat Watch* is also dispositive of the Bloomquists' claims for attorney fees under RCW 4.84-.370(1). The court indicated that attorney fees are available if a county's decision is rendered in a party's favor and at least two courts affirm that decision. *Habitat Watch*, 155 Wn.2d at 413. Here, the Bloomquists did not receive a county decision in their favor because issuing a building permit is ministerial. The Asches' first challenge was at the superior court level. Accordingly, RCW 4.84.370(1) does not apply to give the Bloomquists attorney fees.

¶44 In conclusion, although there may be some nuisances, either private or public, which may be brought outside LUPA's framework, in this case the claims directly related to the invalidity or the misapplication of the zoning ordinance. Because the action was not brought within 21 days of the date when the land use decision was issued, the action is barred, and dismissal under CR 12(b)(6) was appropriate because the action failed to state a claim upon which relief could be granted.

¶45 Affirmed.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

Review denied at 159 Wn.2d 1005 (2007).