277 P.3d 705 (2012)
Laurie FERGUSON, Appellant,
v.
CITY OF DAYTON, a Washington Municipal corporation, and Thomas Goddard, in his individual capacity, Respondents.
No. 29703-9-III.
Court of Appeals of Washington, Division 3.
June 5, 2012.
Andrea Burkhart, Burkhart & Burkhart PLLC, Walla Walla, WA, for Appellant.
Kimberly Rae Boggs, Nealey & Marinella, Dayton, WA, for Respondents.
Thomas Goddard (Appearing Pro Se), Dayton, WA.
KORSMO, C.J.
¶ 1 When an administrative appeal process is provided, a LUPA[1] petition filed within 21 days of the final administrative action is timely even if the ultimate challenge is to a land use action taken more than 21 days earlier. We reverse the trial court and remand this matter for further proceedings.

*706 FACTS
¶ 2 The City of Dayton (City) issued a building permit to Thomas Goddard that allowed him to erect a 36-foot by 30-foot pole building on his property. The building was 5 feet from the property line of his neighbor, appellant Laurie Ferguson, and only 8 feet from her house. The permit issued August 14, 2009. The City's planner advised Mr. Goddard that the roof could not exceed 10 feet in height because of its proximity to the property line.
¶ 3 The City subsequently changed its interpretation and the planner advised Mr. Goddard on September 2, 2009, that the building height was to be measured from the finished grade to the top of the wall plate line. In response to a query from Ms. Ferguson, the planner explained that the "wall plate line" was the top of the wall where the roof system attaches. At the September 28, 2009 city council meeting, Ms. Ferguson questioned the building permit and asked that the project be stopped. She also asked that the planner's interpretation be reviewed. The mayor referred the matter to the City's planning committee.
¶ 4 At the October 12, 2009 city council meeting, the mayor announced that the mayor, the planning committee, and staff had met and determined that the building permit was valid. An attorney for Ms. Ferguson then contacted the City and challenged the interpretation of the height requirement provided for by Dayton Municipal Code (DMC) 5-12.120.[2] A LUPA petition was filed October 27, 2009. The City moved to dismiss the petition on the basis that Ms. Ferguson had not exhausted her administrative remedies by appealing to the Board of Adjustment.
¶ 5 The City subsequently realized that there was no Board of Adjustment; it also admitted that the planning committee that had considered Ms. Ferguson's initial challenge was not the Planning Commission that was assigned the task of hearing appeals of administrative land use decisions. Ms. Ferguson filed an amended LUPA petition and the parties agreed to stay superior court proceedings while the matter was remanded to the Planning Commission for review under the municipal code.
¶ 6 The Planning Commission conducted a public hearing on June 21. After finding the code provision ambiguous, the commission ultimately affirmed the planner's interpretation that building height was only measured to the top of the wall plate lines. Written findings and conclusions were issued on July 21, 2010.
¶ 7 Ms. Ferguson filed a second amended LUPA petition on August 9. The City again moved to dismiss, arguing that the building permit was the final land use decision that had triggered the 21-day appeal period. Ms. Ferguson argued that the City was taking an inconsistent position in light of its earlier argument that she had not exhausted her administrative remedies. The trial court concluded that Asche v. Bloomquist, 132 Wash.App. 784, 133 P.3d 475 (2006), governed the situation and ruled that the August 14, 2009 building permit was the final land use decision. The court dismissed the action for lack of jurisdiction due to untimely filing of the LUPA appeal.
¶ 8 Ms. Ferguson timely appealed to this court.

ANALYSIS
¶ 9 The sole issue presented is what action was the final "land use decision" in this action. Because the building permit was subject to an administrative appeal process, the time for filing a LUPA petition began to run with the final ruling in that process.
¶ 10 LUPA was enacted to ensure timely judicial review of land use decisions. RCW 36.70C.010; Vogel v. City of Richland, 161 Wash.App. 770, 777, 255 P.3d 805 (2011). It requires that a challenge be filed in superior court within 21 days of the "land use decision." RCW 36.70C.040(3). The petition is barred if not timely filed and served. RCW *707 36.70C.040(2). A "land use decision" is defined as
a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on ... [a]n application for a project permit.
RCW 36.70C.020(2).
¶ 11 A "final determination" is one that ends an action between the parties. Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wash.2d 440, 452, 54 P.3d 1194 (2002), amended on recons., 63 P.3d 764 (2003). A building permit is a land use decision. Chelan County v. Nykreim, 146 Wash.2d 904, 929, 52 P.3d 1 (2002); Asche, 132 Wash.App. at 790, 133 P.3d 475. One of the requirements for standing to bring a LUPA action is that "`petitioner has exhausted his or her administrative remedies to the extent required by law.'" Asche, 132 Wash.App. at 792, 133 P.3d 475 (quoting RCW 36.70C.060(2)(d)).
¶ 12 The City builds its case around Asche. There, a couple attempted to challenge the building permit issued for an adjoining property, arguing that Kitsap County had misinterpreted the building codes and permitted too tall of a building that would block their view. Asche, 132 Wash.App. at 789, 133 P.3d 475. The couple did not discover the building permit until two months after it had issued; they did not bring their legal challenge until several months later. Id. at 788-89, 133 P.3d 475. The county code did not provide for an administrative challenge to a building permit. Id. at 792, 133 P.3d 475. The court found the action governed by LUPA and dismissed it for untimely filing as many months had run from the issuance of the building permit to the filing of the superior court action. Id. at 795-96, 133 P.3d 475.
¶ 13 Here, the City convinced the superior court that Asche, a factually similar case, governed and that Ms. Ferguson's action was untimely because it was brought more than 21 days after the building permit issued in August 2009. The trouble with this argument, which the City reprises here, is that the City did provide a process for administrative review of the permit, while Kitsap County did not provide administrative appeals under the code at issue in Asche. This distinction is critical in light of the LUPA definitions noted previously. Ms. Ferguson lacked standing to initiate court proceedings until the administrative appeal process existing in the City had run its course. RCW 36.70C.060(2)(d).
¶ 14 Inherent in the concept of appellate or administrative review is the recognition that a decision is not yet final. A review would be useless if it was unable to change the determination under review. The LUPA focus on a "final determination" recognizes this concept by defining a "land use decision" in terms of the "determination" by the reviewing entity that has the ultimate authority. RCW 36.70C.020(2).
¶ 15 For both of these reasons, we believe the trial court erred in dismissing this action. There was no "land use decision" prior to the final determination by the Planning Commission, which was the entity with the last word on the permit. There also was no standing to file the LUPA petition prior to the exhaustion of the administrative review process. The August building permit was not a "land use decision" because it was not a final determination.[3]
¶ 16 We also note that focus on the original building permit was misplaced because Ms. Ferguson did not challenge whether the permit should have issued. What she challenged was the changed interpretation of building height, something that did not occur until September 2009, and the changed interpretation was then promptly subjected to administrative review.[4]
*708 ¶ 17 Because there was an administrative review process created by the City, the building permit did not become final once a timely review was initiated. Only when that review concluded was there a "final determination" that meant that a "land use decision" existed that could be the subject of a LUPA petition.
¶ 18 The judgment of the superior court is reversed and the matter is remanded for further proceedings.
WE CONCUR: SWEENEY and BROWN, JJ.
NOTES
[1] Land Use Petition Act, ch. 36.70C RCW.
[2] That provision limits buildings within 10 feet of the property line to a height of 10 feet. DMC 5-12.050 defines "Building or structure height" as "the vertical distance measured from the mean elevation of the finished grade around the building to the highest point of the structure or building roof." Clerk's Papers at 130.
[3] This conclusion is implicit in Mellish v. Frog Mountain Pet Care, 172 Wash.2d 208, 257 P.3d 641 (2011). There the court dealt with whether a reconsideration ruling constituted a "final determination" by a hearing examiner.
[4] A second reason why a focus on the initial permit instead of the review process is misplaced derives from the length of time necessary to conduct a review. Standing requires a party to exhaust administrative review where it exists. If the triggering device was the building permit rather than the review process, a government could immunize itself from LUPA petitions simply by making its administrative process last longer than 21 days.