57 P.3d 273 (2002)
114 Wash.App. 245
William BERST and Dianne Berst, husband and wife and their marital community, Appellants,
v.
SNOHOMISH COUNTY, a Washington municipal corporation, Respondent.
No. 49545-3-I.
Court of Appeals of Washington, Division 1.
November 4, 2002.
*275 Jane Koler, Kirkland, WA, for Appellant.
Shawn Aronow, Everett, WA, for Respondent.
*274 COX, A.C.J.
Challenges to land use decisions are generally governed by the Land Use Petition Act (LUPA), chapter 36.70C RCW, not the Declaratory Judgment Act.[1] But LUPA does not apply to decisions that are not land use decisions. Because the imposition of a moratorium under the Forest Practices Act (FPA) is not a land use decision, we reverse and remand.[2]
The Bersts own a 10 acre piece of property in Snohomish County. In September 1998, they requested a pre-application conference with the Snohomish County Department of Planning and Development Services (PDS) to discuss their intended application to short plat their lot into two lots. To prepare for this conference, a County technician visited the site on September 28, 1998. The technician also reviewed aerial photographs of the site from 1991 and 1995, and concluded that clearing and logging had taken place on the site. A "Pre-Application Meeting Submittal Package" was prepared and distributed to the PDS staff before the meeting. This document stated that:
The applicant is required to submit a copy of the FPA [Forest Practices Application] associated with the recent logging activity. If no copy of the FPA can be provided then the county is required by state law (RCW 76.09.060) to deny any and all permits on the site for a period of six years from the date of discovery of the unpermitted logging. Reference POL 6300 for criteria for listing [sic] the mandatory development moratorium. Based on the submittal provided and the recent site visit, it does not appear that the criteria for lifting the mandatory six year moratorium can easily be met.
It appears that the substance of this information was discussed at a meeting in October 1998 between PDS and Mr. Berst. Evidence in the record indicates that Mr. Berst reacted negatively to the information revealed during this discussion.
In mid-December 1998, the Bersts' attorney wrote to the project manager, stating that they did not wish to spend the money to apply for a short plat if the County was certain to deny that application because of logging. This letter acknowledged that the building moratorium had been or would certainly be imposed. The PDS project manager responded, explaining the law requiring the moratorium and the County policy regarding lifting of the moratorium. She explained that such a lifting would have to take place in the context of a permit application, according to the County policy, and that it appeared from the information they had gathered that the Bersts were unlikely to qualify. The Bersts did not apply for the short plat. And there is nothing in the record to indicate that the moratorium described in the Pre-Application Meeting Submittal Package was imposed at any time during 1998.
On March 13, 2000, the Bersts applied for a permit for a larger mobile home to replace the single home they had on the site. PDS employees again visited the site. They spoke to Berst at the site, and he confirmed that he knew that the County was acknowledging the imposition of the moratorium required by state law.
On May 1, 2000, a Building Division Manager approved a "Request to Recognize State Forest Practices Moratorium on Subject Property." This document recommended a moratorium with a retroactive start date of September 28, 1998. The reason for the commencement date was, because "[l]ogging was discovered in 1998 during a pre-application review by the Land Use Division of PDS." Apparently, the County then imposed the moratorium, with the recommended retroactive start date.
On June 13, 2000, PDS employees met with the Bersts and administratively waived *276 the moratorium for the limited purpose of replacing the single-wide mobile home with another mobile home of the same size and in the same location. The Bersts were informed that the moratorium would be effective until September 28, 2004, and they were further informed that they could try to lift the moratorium pursuant to County policy. The Bersts did not appeal the decision that denied, in part, their permit application.
On August 28, 2000, the Bersts commenced this declaratory judgment action. The substance of their complaint is that they challenge the imposition, without prior notice or a hearing, of the moratorium. The prayer of the complaint includes a request to declare that the FPA does not support a moratorium for this property. They also request damages and attorney fees. There is no request to set aside the permit issued in June 2000 or otherwise challenge that permit.
The Bersts moved for summary judgment, arguing that their due process rights were violated and that the Forest Practices Act did not apply to their property. The County moved to dismiss the complaint for failure to state a claim upon which relief can be granted, for failure to sue under the Land Use Petition Act, and for failure to comply with the statute of limitations under LUPA. At the hearing on these motions, the Bersts orally moved to amend their complaint to add an inverse condemnation claim. The court allowed the Bersts to amend the complaint, subject to submitting a written motion, and requested additional briefing on the question of whether the moratorium was an unconstitutional taking. After reviewing the briefing, and without either an additional hearing or evidence, the trial court entered three orders on the same date. One order granted the Bersts' motion to amend the complaint to include a claim for inverse condemnation. The second order denied the Bersts' motion for summary judgment. The third order granted the County's motion to dismiss.
The Bersts appeal the latter two orders.

LUPA
The Bersts argue that the trial court erred in dismissing their claims for failure to bring timely claims under LUPA. They argue that their claims concern only the moratorium procedure, not the permit denial, and that the decision by the County to impose the moratorium under the FPA was not a land use decision that could be challenged in a LUPA appeal. We agree.
A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law that we review de novo.[3] Courts should dismiss under this rule only when it appears beyond a reasonable doubt that no facts justifying recovery exist.[4] Courts presume the allegations of the complaint to be true for the purpose of such a motion.[5]
If materials outside the pleadings are considered, the CR 12(b)(6) motion is treated as a summary judgment motion under CR 56.[6] The court in this case did consider materials outside the pleadings. Thus, we review the decision on the basis of CR 56.
We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[7] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[8] We review questions of law de novo.[9]
Neither party argues that genuine issues of material fact exist. We agree. Thus, we are faced only with the legal question whether LUPA bars the Bersts' claims.
*277 LUPA is the "exclusive means of judicial review of land use decisions."[10] LUPA's stated purpose "is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review."[11] The term "land use decision" means "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals" of certain types of decisions, including an application "for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used[.]."[12] A petition must be filed and served within 21 days of a land use decision.[13]
The Bersts do not dispute that the denial of their application for a permit to replace their mobile home was a land use decision that they could have appealed under LUPA. Moreover, they do not argue that they would have been unable to present their constitutional claims relating to the moratorium during a LUPA appeal of the permit denial.[14]
Instead, they appear to take the position that they do not challenge the denial of the permit at all. Rather, they challenge the moratorium against their property. It appears to be somewhat of an anomaly that the Bersts challenge the moratorium but not the partial denial in June 2000 of their permit application, where the denial of the application was based on the moratorium they now challenge. But we shall take as true the representations the Bersts make to this court that they only challenge the imposition of the moratorium. And our reading of the record before us supports our conclusion that these representations are not inconsistent with that record. We acknowledge that the Bersts' approach arguably allows them to circumvent LUPA by asserting in this case that their attack is solely against the moratorium, while they may later attempt to overturn the County's permitting decision to the extent the moratorium might be held invalid. But those questions are not presently before us, and we need not address them at this juncture.
The dispositive question therefore is whether the imposition of the moratorium in 2000 was a "land use decision" triggering LUPA. We hold that it was not.
LUPA defines the term "land use decision" as a "final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination" on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;
(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.[[15]]
*278 The imposition of the moratorium under the FPA was not a decision on any of the above bases. Under the plain language of the statute, the imposition was not a land use decision.
Because the imposition of the moratorium was not a land use decision, LUPA is not a bar to this declaratory judgment action.[16]

DUE PROCESS
While it is unclear from the record whether the trial court reached the due process issue, we do. The Bersts argue that the moratorium imposition violated their right to procedural due process. The County has not briefed this issue on appeal. We take this opportunity to address the question.
Both the Washington and U.S. constitutions provide that no person shall be deprived of "life, liberty, or property, without due process of law."[17] State deprivation of any of these protected interests is unconstitutional unless accompanied by adequate procedural safeguards.[18] Our Supreme Court has held that the state's due process protection is largely coextensive with that of the U.S. Constitution.[19]
The U.S. Supreme Court explained the test for procedural due process in Mathews v. Eldridge.[20] The Mathews balancing test requires consideration of three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[21]
Our Supreme Court has also adopted this test.[22]
The private interest at issue here is the property interest of the Bersts. There is a risk of erroneous deprivation of such interest because of the procedures used. There was no consideration of information other than that in the County record when the decision was made. Most importantly, there was no prior notice of the 2000 action to impose the moratorium once that decision was made. The obvious substitute procedure here would be for a hearing to consider all relevant information before a decision is made.

TAKINGS
It is also unclear to us whether the trial court reached the takings issue. We do.
The Bersts argue that the trial court erred in dismissing their claim of inverse condemnation for failure to state a claim upon which relief can be granted. We agree.
Article 1, section 16 of the Washington Constitution states that "No private property shall be taken or damaged for public or private use without just compensation having been first made,...." There are two forms of takings. The first, physical occupation, "occurs when government encroaches upon or occupies private land for its own proposed use."[23] The second, regulatory takings, occurs when "government actions do not encroach upon or occupy the property yet still affect and limit its use to such an *279 extent that a taking occurs."[24] The Bersts claim alleges a regulatory taking.
The Bersts argue that the moratorium was a compensable taking under the United States Supreme Court's decisions in Lucas v. South Carolina Coastal Council[25] and First English Evangelical Lutheran Church v. Los Angeles.[26] But at oral argument the Bersts properly conceded that Penn Central Transportation Co. v. City of New York[27] controls the disposition of this case. That concession also necessarily concedes that Lucas and First English do not apply.[28]
In Penn Central, the Supreme Court characterized previous takings analyses as "these essentially ad hoc, factual inquiries" in which the court considered several factors: the economic impact of the regulation on the claimant; the extent to which the regulation has interfered with distinct investment-backed expectations; and the character of the governmental action.[29]
Cases involving claims of inverse condemnation can seldom be dismissed on the pleadings because "the Supreme Court itself has admitted its inability `to develop' any `set formula' for determining when compensation should be paid, resorting instead to `essentially ad hoc, factual inquiries' to resolve this difficult question."[30] "While dismissal of a complaint for inverse condemnation is not always inappropriate, such a dismissal must be reviewed with particular skepticism to assure that plaintiffs are not denied a full and fair opportunity to present their claims."[31]
While the parties submitted evidence to support their arguments regarding all other claims in this case, there was no opportunity for the Bersts to introduce additional evidence to support the takings claim before the trial court dismissed it. Thus, unlike the trial court's dismissal of the Bersts' due process claim after consideration of evidence outside the pleadings, the trial court's dismissal of the takings claim should be reviewed as a dismissal under 12(b)(6).
A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law that we review de novo.[32] Courts should dismiss under this rule only when it appears beyond a reasonable doubt that no facts justifying recovery exist.[33] Courts presume the allegations of the complaint to be true for the purpose of such a motion.[34]
It is not clear, beyond a reasonable doubt, that no facts justifying recovery exist. The County argues that the Bersts alleged no economic impact or interference with investment-backed expectations. This is incorrect. The Bersts alleged in their amended complaint that the moratorium prevented them "from making reasonable use of their property by prohibiting any sort of development on it for a six-year period." They also stated in their complaint that the County denied their application for a permit to replace their single-wide mobile home with a triple-wide mobile home. Thus the trial *280 court erred in granting dismissal for failure to state a claim upon which relief can be granted.
The Bersts cite to a series of cases from other jurisdictions, which they argue support their argument that imposition of a moratorium in the absence of due process rights constitutes an unconstitutional taking. Several of these cases appear to conflate due process and takings analysis to reach such a conclusion.[35] We are bound to follow the United States Supreme Court authority, notably Tahoe and Penn Central, and decline to adopt these novel analyses.

ATTORNEY FEES
The County requests fees and costs under RCW 4.84.370, which provides that fees and costs be awarded to the prevailing party in an appeal of a land use decision by a county, city, or town, if the prevailing party also prevailed in all prior judicial proceedings.[36] The county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.[37] The County prevailed below, but does not prevail here. Accordingly, no fees are awardable.
We reverse and remand for further proceedings that are consistent with this opinion.
ELLINGTON and AGID, JJ., concur.
NOTES
[1] Grandmaster Sheng-Yen Lu v. King County, 110 Wash.App. 92, 99, 38 P.3d 1040 (2002) (citing RCW 36.70C.030(1)).
[2] We grant the Bersts' motions to supplement the record with their original and amended complaints.
[3] Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).
[4] Cutler, 124 Wash.2d at 755, 881 P.2d 216.
[5] Cutler, 124 Wash.2d at 755, 881 P.2d 216.
[6] CR 12(b).
[7] CR 56(c).
[8] Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
[9] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[10] RCW 36.70C.030. The statute lists several exceptions to this rule, none of which applies here.
[11] Chelan County v. Nykreim, 146 Wash.2d 904, 917, 52 P.3d 1 (2002), quoting RCW 36.70C.010.
[12] RCW 36.70C.020(1) (italics ours).
[13] RCW 36.70C.040(3).
[14] A court may grant relief requested in a LUPA petition only if the party seeking relief has carried the burden of establishing that one of the six standards has been met. RCW 36.70C.130(1). One of those standards is that "[t]he land use decision violates the constitutional rights of the party seeking relief." RCW 36.70C.130(1)(f).
[15] RCW 36.70C.020(1).
[16] Cf. Grandmaster Sheng-Yen Lu v. King County, 110 Wash.App. 92, 38 P.3d 1040 (2002).
[17] U.S. Const. amend. XIV, 1; Wash. Const. art. I, 3.
[18] Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
[19] Washington v. Manussier, 129 Wash.2d 652, 679-80, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997).
[20] 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
[21] Mathews, 424 U.S. at 335, 96 S.Ct. 893.
[22] See, e.g., In re Young, 122 Wash.2d 1, 43-44, 857 P.2d 989 (1993).
[23] Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982)).
[24] Palazzolo, 533 U.S. at 617, 121 S.Ct. 2448 (citing Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)).
[25] 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).
[26] 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).
[27] 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).
[28] Recently, the U.S. Supreme Court has rejected the argument that First English and Lucas require application of the categorical Lucas rule in a case challenging a temporary moratorium. Tahoe-Sierra Preservation Council, Inc., v. Tahoe Regional Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 1478, 152 L.Ed.2d 517 (2002). Rather, the Court held that the analysis set forth in Penn Central is the appropriate analysis in the event of a temporary moratorium. Tahoe, 122 S.Ct. at 1489.
[29] Penn Central, 438 U.S. at 124, 98 S.Ct. 2646.
[30] McDougal v. County of Imperial, 942 F.2d 668, 676 (9th Cir.1991) (citations omitted).
[31] McDougal, 942 F.2d at 676 (citations omitted).
[32] Cutler, 124 Wash.2d at 755, 881 P.2d 216.
[33] Cutler, 124 Wash.2d at 755, 881 P.2d 216.
[34] Cutler, 124 Wash.2d at 755, 881 P.2d 216.
[35] Q.C. Construction Co. v. Gallo, 649 F.Supp. 1331 (1986); Boonstra v. City of Chicago, 214 Ill.App.3d 379, 158 Ill.Dec. 576, 574 N.E.2d 689 (1991).
[36] RCW 4.84.370(1).
[37] RCW 4.84.370(2).