IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEAN CONGDON, an individual,<br><br>                     Appellant,<br><br>       v.<br><br>ISLAND COUNTY, a political subdivision of the State of Washington; and WILLIAM SETTER and JANE DOE SETTER, individually and as a marital community,<br><br>                  Respondents,<br><br>DAVID WECHNER and JANE DOE WECHNER, individually and as a marital community and in David Wechner' s former official capacity as Director Island County Planning and Community Development Department; JESS COOPER and JOHN DOE COOPER individually and as a marital community and in Tess Copper's former official capacity as Assistant Planner Island County Planning and Community Development Department; JANET WRIGHT and JOHN DOE WRIGHT individually and as a marital community and in Janet Wright's official capacity as Assistant Planner Island County Planning and Community Development Department,<br><br>                  Defendants. | No. 79452-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Jean Congdon sued her neighbor and Island County for damages arising out of the County's decision on her shoreline exemption permit.

Citations and pin cites are based on the Westlaw online version of the cited material.

The trial court dismissed the lawsuit on summary judgment. Congdon appeals. We conclude that the Land Use Petition Act (LUPA) and collateral estoppel bar her claims, and that the statute of limitations bars some of her claims. We affirm.

BACKGROUND

In 2006, Congdon purchased a waterfront lot at Lagoon Point in Greenbank, Whidbey Island, which was located between two other lots. The adjacent lot to the north was a developed lot with a single family residence and the adjacent lot to the south was a vacant lot. In 2012, William Setter purchased the vacant lot. Congdon and Setter intended to build homes on their lots, which were both on the end of the canal and "pie" shaped, meaning each home would be partly visible from the other property. Both applied for shoreline exemption (SHE) permits to determine the setback distance from the shoreline or the "Ordinary High Water Mark" (OHWM).

Under the Island County Code in place at the time, the normal shoreline setback was 50 feet from the OHWM. ICC 17.05.200(10)(a). Under these regulations, if there were existing principal residences on either side of the proposed building footprint, the setback for the proposed structure "may be reduced by review and approval of the shoreline administrator." ICC 17.05.200(10)(c)(i). In these cases, the setback "may be reduced to the average of the setbacks of the existing adjacent principal residences." ICC 17.05.200(10)(c)(i). If there was only one existing principal residence on either side of the proposed building site, the setback "may be reduced (with approval of the administrator) to the average of the setbacks for the existing

2

adjacent principal residence and the applicable setback for the adjacent vacant parcel." ICC 17.05.200(10)(c)(ii).

Setter's permit application requested the standard 50-foot setback. Congdon's application proposed a 26-foot setback. On April 30, 2014, the County Planning Department (Department) approved Setter's permit.

In May 2014, Congdon learned from a member of the Lagoon Point Architectural Committee that "something was going on between Setter and the Planning Department that would affect where she could build her home." Department Planner Janet Wright had previously told Congdon that the setback criteria in her proposed plot plan was correct. When Congdon asked Wright if anything had changed with her proposed setback, Wright confirmed that the setback remained as she proposed. About a week later, Setter saw Congdon placing stakes on her lot for the outline of her home within 18 feet of the bank. When Congdon told him the Department confirmed her proposed setback and she expected to receive her permit approval the following week, Setter became upset, concerned about the possible negative impact that the location of her home would have on his view. He complained in an e-mail to Department planners and the Director of Planning.

On June 13, 2014, the Department approved Congdon's SHE permit with several conditions, including a 43-foot shoreline setback. Citing ICC 17.05.200.B(10)(c)(ii), the Department determined a 43-foot setback "is the average of the 50 foot standard shoreline setback for the undeveloped lot to the south and the 36 foot setback of the residence to the north."

3

Congdon appealed the Department's decision to the Island County Superior Court under LUPA, RCW 36.70C. She claimed two Department planners, first Jason Johnson and then Wright, verbally approved her 26-foot setback, but after Setter complained to the County, the Director of Planning, David Wechner, "became involved in the setback decision" and she "was then informed that the new setback would be 50 feet, which was shown as a string line on a County-edited drawing of [her] submitted plot plan." She further claimed "substantial evidence in the record" showed the County should have approved her application for a 28-foot[1] setback without any changes and that "the County failed to properly review and approve a decision [on her setback application]." Finally, she claimed the decision violated her constitutional rights to due process because the County "failed to afford [her] her opportunity for an open record administrative appeal hearing" and "failed to adequately review and issue a decision in a fair and equitable manner and in a manner that treated the application equally to other shoreline determinations made within Island County generally and the more immediate area." She asked the court to reverse the decision or remand for an open record hearing before the County's Hearing Examiner, for permission to amend the pleading to conform to the proof, and "other and further relief as may be just and equitable."

In February 2016, the superior court granted the County's motion for summary judgment, affirming the County's decision and dismissing Congdon's

---

[1] Congdon's LUPA petition states her requested setback was for 28 feet though her complaint for damages states that it was for 26 feet.

LUPA petition with prejudice. The court found the County correctly interpreted and applied ICC 17.05.200(B)(c)(10)(ii) to Congdon's shoreline exemption permit application. The court further found that testimonial evidence was unnecessary because code interpretation is a question of law and "because the County's plain language analysis is correct, any prior informal interpretation to the contrary would not bind the County to such an incorrect reading or application of the Code." Congdon did not appeal this order.

In early 2016, Island County amended its Shoreline Master Program and included a provision that changed the minimum setbacks to 40 feet. ICC 17.05A.090(D)(3), Table 3 (setbacks for SRCC or "Shoreline Residential-Canal Community"). The amendments also changed the formula for averaging setbacks of existing residences. ICC 17.05A.090(F)(1), (2).

In May 2016, Congdon applied for a new SHE permit seeking a 37-foot setback under the new rules.[2] County staff confirmed to her the accuracy of her submission and proceeded to process her Shoreline Exemption request. During this process, County staff concluded that both Congdon and staff had misapplied the setback averaging provisions. The County notified Congdon of the new interpretation and issued a formal decision granting her shoreline exemption with a 38-foot shoreline setback.

---

[2] Congdon's May 2016 permit application was not designated on appeal. The facts relating to this application are taken from the Island County Hearing Examiner's findings on Congdon's appeal of the application decision. Because she did not appeal the Hearing Examiner's decision, we accept the findings of fact as verities.

Congdon appealed the County's decision to the Island County Hearing Examiner. The parties presented evidence in a public hearing before the Hearing Examiner on October 20, 2016. Applying ICC 17.05A.090(F)(2), the Hearing Examiner concluded that the County properly reduced the setback to 38 feet and denied the appeal. The Hearing Examiner rejected Congdon's interpretation of subsection (2) which "requires reading into the Ordinance additional language not present, and violates a standard rule of statutory construction." Congdon did not appeal the Hearing Examiner's decision.[3]

In 2018, representing herself, Congdon filed a complaint for damages against the County, Department staff, and Setter. She claimed the County's conduct during her permit approval process deprived her of her constitutional right to the use and enjoyment of her property under the federal and state constitutions, deprived her of a property interest without notice and opportunity to be heard under the federal and state constitutions, and violated the right to equal protection under the federal and state constitutions. She further claimed the County created a "view protection" right for Setter, retaliated against her when she complained about her permit in violation of her First Amendment rights, negligently delayed processing her application, and intentionally misrepresented to her that her setback had not changed despite an agreement with Setter to increase his setback to her detriment.

---

[3] Neither Congdon's "Comprehensive Statement of Appeal" nor the record before the Hearing Examiner have been designated on appeal. Accordingly, our review of that record is limited to the Hearing Examiner's findings and decision.

As to Setter, Congdon claimed he made material misrepresentations to the Department and conspired with the Department to conceal them from her. Finally, she claimed both the County and Setter caused her severe emotional distress. Congdon claimed she was unaware of the collusion between Setter and the Department until she made a public records request in 2017 and obtained e-mails exchanged in 2014 containing Setter's complaints and the County's response. She sought "compensatory, emotional and punitive damages in an amount not less than $300,000."

Both Setter and the County moved for summary judgment, arguing the complaint was barred by collateral estoppel, LUPA preemption, and the statute of limitations and asserted other substantive defenses. The trial court granted summary judgment and dismissed the complaint with prejudice.

Congdon appeals.

ANALYSIS

We review de novo a trial court's order on summary judgment. Spokane Research & Def. Fund v. City of Spokane, 155 Wn.2d 89, 106, 117 P.3d 1117 (2005). In reviewing a summary judgment order, we perform the same inquiry as the trial court. Sheikh v Choe, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." Rublee v. Carrier Corp., 192 Wn.2d 190, 199, 428 P.3d 1207 (2018). "Summary judgment is proper when the record demonstrates there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law." Munich v. Skagit Emergency Commc'ns Ctr., 175 Wn.2d 871, 877, 288 P3d 328 (2012).

LUPA preemption

Congdon contends LUPA does not preempt her complaint because the statute does not apply to claims for monetary damages or compensation. We disagree.

LUPA governs the process for judicial review of land use decisions. A "land use decision" is "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals," and includes final determinations on "[a]n application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used," and "[a]n interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property. . . ." RCW 36.70C.020(2)(a), (b). An unappealed land use decision "becomes final and binding and is deemed valid and lawful." Mercer Island Citizens for Fair Process v. Tent City 4, 156 Wn. App. 393, 399, 232 P.3d 1163 (2010). Accordingly, "even illegal decisions must be challenged in a timely, appropriate manner." Mercer Island Citizens, 156 Wn. App. at 399.

RCW 36.70C.030 provides LUPA "shall be the exclusive means of judicial review of land use decisions," but lists exceptions where it does not apply, including:

8

> Claims provided by any law for monetary damages or compensation. If one or more claims for damages or compensation are set forth in the same complaint with a land use petition brought under this chapter, the claims are not subject to the procedures and standards, including deadlines, provided in this chapter for review of the petition. The judge who hears the land use petition may, if appropriate, preside at a trial for damages or compensation.

RCW 36.70C.030(1)(c).

Generally, this section applies to exclude from LUPA claims that seek compensation rather than a reversal or modification of a land use decision. Lakey v. Puget Sound Energy, 176 Wn.2d 909, 928, 296 P.3d 860 (2013). But where "plaintiffs needed to show the illegality of part of the permit to succeed on their claims," this amounts to "an attack on a land use decision time barred by LUPA." Lakey, 176 Wn.2d at 926 n.11 (citing James v. County of Kitsap, 154 Wn.2d 574, 583 -586, 115 P.3d 286 (2005)); see also Asche v. Bloomquist, 132 Wn. App. 784, 801, 133 P.3d 475 (2006) (LUPA precludes public nuisance claim that depended on a finding that County improperly applied zoning code to specific property); Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 24-25, 352 P.3d 807 (2015) ("a damage claim may still be controlled by LUPA if it is dependent on 'an interpretative decision regarding the application of a zoning ordinance.'"). Accordingly, "claims for damages based on a LUPA claim must be dismissed if the LUPA claim fails." Mercer Island Citizens, 156 Wn. App. at 395-96, 405 (dismissing claims for damages under 42 U.S.C. §1983 that depended on the validity of permit); see also Shaw v. City of Des Moines, 109 Wn. App. 896, 901, 37 P.3d 1255 (2002) ("If the petitioner loses the LUPA appeal, the damages case is moot and the matter is over.").

Here, the complaint for damages is based on the County's "conduct throughout Congdon's SHE Permit application process." The complaint also asserts the County "engaged in unlawful procedure in contravention of RCW 36.70C.130(1)(a)," and alleges:

> By altering the appeals statement in Congdon's SHE 074/14, the Department Defendants sought to circumvent the administrative appeal that would have been available to Congdon. The Department Defendants engaged in unlawful procedure in contravention of RCW 36.70C.130(1)(a), when they changed Congdon's application without her knowledge or authorization, improperly revised her setback and failed to follow prescribed procedures under Island County Code. There is no Code provision that authorizes Department Staff to change a SHE Permit application once submitted.

Indeed, in her LUPA petition she challenged the same conduct as a land use decision claiming "[t]hat Decision erroneously relied on a site plan which was not submitted by, nor authorized by Petitioner," and "[t]he County failed to properly review and approve a decision based on the applied for 28 foot stringline setback." See RCW 36.70C.130(1)(a) (a court may grant relief under LUPA where "[t]he body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless."). Specifically, her LUPA petition alleged:

> Instead of issuing a decision on Petitioner's application, the County materially changed the application and issued an approval of a shoreline decision not based on Petitioner's applied for plans and project. In doing so, the County denied Petitioner the opportunity for administrative appeal. Further, the County both failed to properly evaluate and issue a decision on the actual application. As well, the County's decision was materially and substantively unsupported by applicable facts and shoreline, critical area, and environmental laws and regulations.

Congdon's due process and equal protection claims are also based on the County's "conduct throughout Congdon's SHE Permit application process" and allege the County's conduct violated her constitutional rights. Indeed she alleged these same constitutional violations in her LUPA petition:

> The Land Use Decision . . . violates Petitioner's constitutional rights to procedural due process because the County failed to afford Petitioner her opportunity for an open record administrative appeal hearing. . . .
>
> . . .
>
> The Land Use Decision . . . violates Petitioner's constitutional rights to procedural due process because the County failed to adequately review and issue a decision in a fair and equitable manner and in a matter that treated the application equally to other shoreline determinations made within Island County generally and the more immediate area.

See RCW 36.70C.130(1)(f) (a court may grant relief under the statute if "the land use decision violates the constitutional rights of the party seeking relief."). Her First Amendment claim likewise alleges the County acted improperly in processing her permit, claiming the County altered the appeal statement in her permit and ignored her complaints to prevent her from challenging its decision. And as she apparently acknowledges in her complaint, LUPA was the proper avenue to assert this claim:

> After receiving her SHE permit, Congdon contacted Island County Commissioners Helen Price Johnson, Aubrey Vaughan and Jill Johnson, to voice her concerns about the Department's drastic alteration of her plot plan, the 43 foot setback requirement on her property, and how she was singled out and treated differently from her neighbor - but finding no Commissioner willing to investigate her concerns, Congdon was left with no other option than to hire an attorney and file a costly Washington Land Use Petition Act (LUPA).

11

The other tort claims are also preempted by LUPA because they depend on a determination that the County acted improperly in granting her permits. See Asche, 132 Wn. App. at 800; Woods View II, 188 Wn. App. at 24-25. The complaint alleges that Setter misrepresented the applicable distances to be used in the setback calculation, resulting in a permit that improperly put her setback farther from the shoreline, thereby depriving of her use and enjoyment of her property for which she claims damages. The complaint also alleges that the County misrepresented that her setback had not changed during the permit review process and concealed from her the Department's agreement with Setter "to increase Setter's setback to Congdon's detriment." But again, the only "detriment" Congdon identifies is the County's approval of a setback that was less favorable to her, a decision upheld in the LUPA action. The concert of action and emotional distress claims seek damages for the same conduct. But the final orders in Congdon's LUPA action and her appeal to the Hearing Examiner determined that the setbacks were properly calculated under the applicable regulations and dismissed the LUPA claims. Accordingly, since her LUPA claim failed, any "damages based on [that] LUPA claim must be dismissed." Mercer Island Citizens, 145 Wn. App. at 405.

The negligent delay claim likewise depends on a finding that the County acted improperly in approving the permit. The complaint alleges the County delayed Congdon's SHE permit approval in order to allow Setter to build farther landward to accommodate his large home and improve his view, but the only damages she claims is that she received a setback that unfairly favored Setter.

Woods View II, cited by Congdon, is inapposite. There, the claims for damages did not challenge the permit decision itself but alleged the delay in issuing the permit caused financial damage to the plaintiff developer (lots sold for less, business loan went into default, property went into foreclosure, developer went bankrupt). Woods View II, 188 Wn. App. at 17. Thus, the court held LUPA did not bar those claims. Woods View II, 188 Wn, App. at 25. But here, all of the damages claimed are a result of the permitting decision itself.

Accordingly, because all of Congdon's claims challenge the County's actions in its approval of her permits, LUPA preempts them. And because she failed to appeal the court's order dismissing the LUPA petition on summary judgment and the Hearing Examiner's decision upholding the 2016 permit, they remain final, binding orders. Consequently, any claims for damages based on those actions must be dismissed. Mercer Island Citizens, 145 Wn. App. at 405.

Collateral Estoppel

Also, collateral estoppel bars Congdon's claims for damages. We review de novo whether collateral estoppel bars relitigation of an issue. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel is "a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal." Hadley v. Maxwell, 144 Wn.2d 306, 311, 27 P.3d 600 (2001) (citations omitted). "Collateral estoppel is not a technical defense to prevent a fair and full hearing on the merits of the issues to be tried," rather, the focus is on "whether the parties to the earlier proceeding had a full and fair hearing on the issue." Hadley, 144

13

Wn.2d at 311. Collateral estoppel bars subsequent claims when all of the

following are established:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

Hadley, 144 Wn.2d at 311 (citation omitted).

Here, all the elements of collateral estoppel are established.[4] Congdon

raised issues in her LUPA petition identical to those raised in her complaint for

damages, which were actually litigated in the LUPA proceeding. As discussed

above, the LUPA petition challenged the County's approval process of her

permit, alleging the County acted improperly by changing Congdon's 2014

application and approving a permit that was not based on her submitted plans,

and making a decision that was not based on the applicable facts and law. The

court found that the County properly applied the setback averaging provision of

the County code and rejected her argument that the County was bound by any

preliminary determinations of the setback distance. In her appeal to the Hearing

Examiner, she challenged the County's application of the new setback

regulations to her 2016 permit. The Hearing Examiner concluded the County

properly reduced the setback.

Also, as discussed above, the complaint alleges damages caused by this

same conduct. The only damages Congdon identifies relate to the deprivation of

---

[4] There is no dispute that element (3) is established; the party against whom collateral estoppel is asserted (Congdon) was a party to the prior adjudication.

her use and enjoyment of her property as a result of the County's improper setback determination.

While Congdon notes that her complaint asserts new tort claims and that the County gave Setter an unlawful "view right," collateral estoppel still applies to bar her claims.[5]  As our courts have acknowledged:  "[W]hen collateral estoppel is asserted, the second claim is always different from the first.  The former claim and the new claim can be expected to raise at least some different ultimate issues.  What matters is whether facts established in the first proceeding foreclose the second claim."  Scholz v. Washington State Patrol, 3 Wn. App. 2d 584, 596-97, 416 P.3d 1261 (2018) (internal citation omitted).  Here, Congdon's prior LUPA action fully and fairly resolved the issue of how close to the water she could build her home under the Island County Code; the superior court and the Hearing Examiner determined that the County's approval of her setback was proper under the applicable regulations.   All of Congdon's subsequent claims allege damages caused by this decision, i.e., that this setback determination prevented her from building closer to the water and enhancing her property value, thereby depriving her of her use and enjoyment of her property.  The claims against Setter likewise seek damages resulting from the setback decision.

---

[5] The "new" claim that the County improperly created a "view right" for Setter alleges the same misconduct alleged in the LUPA petition, i.e., that the County gave Setter preferential treatment.

Since the superior court and Hearing Examiner already determined that this setback was the legally approved distance from which she could build, her claims for damages caused by this decision fail.

Finally, Congdon fails to show applying collateral estoppel in this context results in an injustice. To determine whether an injustice will result, we consider whether "the party against whom the estoppel is asserted [had] interests at stake that would call for a full litigational effort." Hadley, 144 Wn.2d at 312 (citations omitted). If the party did not have sufficient motivation to fully and vigorously litigate the issue during the first proceeding, applying collateral estoppel to prevent that party from litigating that issue in the subsequent action works an injustice. Weaver v. City of Everett, 4 Wn. App. 2d 303, 318-319, 421 P.3d 1013 (2018). Here, Congdon was fully motivated to litigate and vigorously did so in the first proceedings. Indeed, she acknowledges in her complaint that she "was left with no other option than to hire an attorney and file a costly Washington Land Use Petition Act (LUPA)." She also litigated the County's approval of the second permit even after the setback regulations were amended in her favor and the County approved a setback that was only one foot away from what she requested.

Statute of Limitations

Finally, the statute of limitations bars claims arising out of the 2014 permit decision. See RCW 4.16.080(2) (three-year statute of limitations). The discovery rule does not apply here to toll the limitations period as Congdon claims. See Green v. A.P.C., 136 Wn.2d 87, 95, 960 P.2d 912 (1998) (under

16

Washington's discovery rule, cause of action does not accrue until a party knew or should have known the essential elements of the action). Congdon alleged in her LUPA petition filed in July 2014 that Setter improperly influenced the County and the County improperly changed her setback. She makes these same claims in e-mails she exchanged with the County and Setter in 2014. Thus, she had sufficient knowledge of the essential elements of her damages claim long before the limitations period ran. See Green, 136 Wn.2d at 95 (cause of action accrues if party "should have discovered salient facts regarding a claim"); Busenius v. Horan, 53 Wn. App. 662, 667, 769 P.2d 869 (1989) ("Notice that would lead a diligent party to further inquiry is notice of everything to which such inquiry would lead."). Moreover, she does not explain why she waited until 2017 to file her public records request when she had sufficient reason to do so in 2014.

     We affirm.

_____
Chun, J.

WE CONCUR:

_____     _____

17