IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF UNION GAP, a municipal corporation of the State of Washington, | ) ) ) | No. 34740-1-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| | ) | PUBLISHED OPINION |
| PRINTING PRESS PROPERTIES, L.L.C., a Limited Liability Corporation registered and doing business in Washington State, | ) ) ) ) ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Plaintiff city of Union Gap and defendant Printing Press

Properties, LLC, (Printing Press) scrimmage as to whether Printing Press may cut a curb

and gain direct access to a major arterial from its land. The trial court granted Printing

Press summary judgment and denied Union Gap an injunction to prohibit the access.

Because Printing Press signed a development agreement granting Union Gap the

prerogative to deny direct access to the arterial, we reverse and grant judgment to Union

Gap.

FACTS

This lawsuit concerns Printing Press' access to Valley Mall Boulevard, a new

arterial, whose centerline often serves as the boundary between the cities of Yakima and

Union Gap. Union Gap, the original Yakima City, lies to the south of Yakima. The boulevard runs east-west and connects Interstate 82 and the Yakima Air Terminal, Yakima's principal airport. Union Gap designed, constructed, and maintains the boulevard.

Printing Press owns commercial property abutting Valley Mall Boulevard and adjacent to the boulevard's intersection with Longfibre Road. All of Printing Press' land now lies within the Yakima City limits and north of the boulevard. Railroad tracks run north and south and lay directly east of Printing Press' land. As part of the boulevard improvement, Union Gap constructed a bridge over the tracks.

Printing Press seeks to build direct access from its property to Valley Mall Boulevard. It labels this access as a "driveway." The city of Union Gap, citing safety concerns, denied Printing Press' application to create the driveway. Instead of appealing Union Gap's denial of access, Printing Press withdrew its application and submitted the same proposal to the city of Yakima, which proposal Yakima approved. With this suit, Union Gap seeks to permanently enjoin Printing Press from cutting the boulevard curb such that a constructed driveway permits access on to the boulevard.

Before construction of Valley Mall Boulevard, Longfibre Road provided ingress and egress to Printing Press' land via Washington Avenue, a major east-west arterial to the north of the boulevard. Printing Press' land abuts Longfibre Road. Longfibre Road still connects Printing Press' land to Washington Avenue and now connects the land to

2

the boulevard. Printing Press assigned some of its land to Lowe's Home Improvement for a store. Printing Press and Lowe's seek direct access to the boulevard.

Before commencing construction for Valley Mall Boulevard, Union Gap adopted city Ordinance 2123 to govern use of the future boulevard. The ordinance intended to provide coordinated standards for permitting access to the boulevard and to confirm that the access rights of abutting landowners are subordinate to the public's right and interest in a safe and efficient arterial system. UNION GAP MUNICIPAL CODE (UGMC) 9.34.010. Union Gap Ordinance 2123 designated the boulevard as a "controlled access arterial" and permits driveway access to the boulevard only "when other alternatives such as an abutting public street or internal access road are not possible for access." UGMC 9.34.060(a).

Union Gap possesses authority to condemn property outside its jurisdiction. RCW 8.12.030; *In re Petition of City of Long Beach*, 119 Wn. App. 628, 634, 82 P.3d 259 (2004). Nevertheless, to anticipatorily quell Yakima residents' concerns about Union Gap's control along Valley Mall Boulevard on Yakima's side of the road, Union Gap and Yakima, on March 8, 2001, entered an interlocal agreement. The two had planned the boulevard since the late 1990s. The agreement in part reads:

> This Interlocal Agreement is made by and between the CITY OF YAKIMA, a Washington municipal corporation, hereinafter "Yakima," and the CITY OF UNION GAP, a Washington municipal corporation, hereinafter "Union Gap," each being duly authorized and acting under the

3

laws of the State of Washington, pursuant to authority vested in each by the Interlocal Cooperation Act, RCW Chapter 39.34, as follows:

1. Union Gap is involved in the development of a project known as the "Valley Mall Boulevard Extension," which is an effort to purchase right of way and construct an extension of Valley Mall Boulevard from its present location near the I-82 Interchange in Union Gap to the Yakima Air Terminal, some distance to the West. Yakima supports this project and has allocated $590,000.00 of federal highway safety funds for the project. The Valley Mall Boulevard project is a cooperative venture between the Washington State Department of Transportation, the City of Yakima, the City of Union Gap, and Yakima County. The project is of major significance to the entire region as it would provide an important direct link between the air terminal and the I-82 freeway.

2. Union Gap Ordinance No. 2271 authorized the Union Gap City Attorney to initiate condemnation proceedings for acquisition of the necessary right of way in Yakima County Superior Court Cause No. 01-2-00041-1.

3. In the course of the hearing required for adjudication of use and necessity of this project, some land owners have argued that the Property sought to be condemned is located within the boundaries of the City of Yakima and not within the boundaries of the City of Union Gap. . . .

4. The parties hereto are authorized by RCW 39.34.030 to exercise their powers of condemnation jointly, and for that purpose, the City of Yakima herewith assigns to the City of Union Gap all of its authority and attendant ability to condemn the Property for the Valley Mall Boulevard Project, as described in Exhibit A. For these purposes, the City of Union Gap may act on behalf of the City of Yakima, in its place and stead, in the negotiation for, condemnation and acquisition of the Property located within the boundaries of the City of Yakima.

5. As partial consideration for this joint undertaking, Union Gap shall protect, defend, indemnify, and hold Yakima harmless from and against any and all claims, demands, losses, liens, liabilities, penalties, fines, lawsuits, and other proceedings and costs and expenses (including attorney's fees and disbursements), which accrue to or are incurred by Yakima on or after execution of this Interlocal Agreement and arise directly or indirectly from or out of, relate to, or in any way are connected with

(1) The eminent domain proceedings or any related actions contemplated by this Interlocal Agreement.

> (2) Challenges concerning the legal authority to enter into or implement this lnterlocal Agreement or the ordinance authorizing condemnation.
>
> . . . .
>
> (5) The design, construction, reconstruction, installation, repair, maintenance, operation, alteration, or modification of the Valley Mall Boulevard street and transportation improvements (or other public improvements) on the property . . . .
>
> . . . .
>
> 7. Yakima and Union Gap agree that this Interlocal Agreement shall have an indefinite duration and cannot be terminated unless both parties consent in writing to such termination.

Clerk's Papers (CP) at 249-51. Yakima passed and adopted the interlocal agreement as a city ordinance on March 6, 2001.

In a declaration in support of Printing Press' summary judgment motion, Yakima City Attorney Jeff Cutter expounded on Yakima's view of the agreement. Although Cutter interpreted the agreement to authorize Union Gap to act as Yakima's agent, he declared that the:

> Interlocal Agreement simply authorized Union Gap to act on behalf of Yakima with respect to the condemnation of properties located within Yakima jurisdiction. Union Gap acted as "agent" for City of Yakima. It did not change municipal boundaries, relinquish jurisdictional authority or otherwise modify land use authority with respect to properties lying within the City of Yakima.

CP at 1046. Jeff Cutter challenged Union Gap's claim that Yakima assigned Union Gap the former's "regulatory authority to regulate the Boulevard." CP at 963.

To facilitate the Valley Mall Boulevard project after signing the interlocal agreement, Union Gap procured the needed land through a combination of voluntary

5

purchases and condemnation proceedings. Around 2000 and before signing the interlocal agreement, Union Gap contacted Printing Press to acquire a strip of the southern portion of its land to lengthen the boulevard to the west. Although some Yakima residents contested Union Gap's authority to condemn land located in Yakima, Printing Press did not. Printing Press' land then rested in both Yakima and Union Gap.

During negotiations for the purchase of Printing Press' land, Union Gap paid Printing Press $750 to conduct an appraisal of the needed 95,377 square feet of land. Printing Press' appraisal acknowledged that immediate access to its land "is by Longfibre Road which is a satisfactory two lane rural road," and that "[w]hen Valley Mall Boulevard is completed, immediate access [to the boulevard] may not be enhanced due [to] the rise of [a] bridge over the railroad tracks." CP at 324. Printing Press denies that this appraisal language contemplated Union Gap's acquisition of Printing Press' access rights to the boulevard.

Printing Press' appraisal valued the portion of 95,377 square feet of property to be taken by Union Gap for Valley Mall Boulevard at $125,600. Union Gap ultimately purchased the plot from Printing Press for $45,000. According to Printing Press, it donated the difference between the purchase price and the value of the property to the boulevard project. As part of the transfer, Printing Press required Union Gap to sign a "Donee Acknowledgment," that recognized that Union Gap acquired all of Printing Press' "right, title or interest in the property by quitclaim deed." CP at 239.

On March 19, 2001, Printing Press executed a quitclaim deed to a narrow strip of land for use as part of Valley Mall Boulevard in favor of Union Gap. The deed read, in relevant part:

> Valley Mall Boulevard Extension
>
> The Grantor, Printing Press Properties, LLC, a Washington Limited Liability Company, for and in consideration of the sum of TEN and No/100 —($10.00)—Dollars, and other valuable consideration, conveys and quitclaims to the City of Union Gap, a Municipal Corporation of the State of Washington, the following described real estate, and any after acquired interest therein, situated in Yakima County, in the State of Washington, to the same extent and purpose as if the rights herein granted had been— acquired under Eminent Domain statutes of the State of Washington.

CP at 394. The transfer included only a small portion of Printing Press' parcel. Printing Press reserved no easement or other interest in the transferred land. Nevertheless, Jay Sentz, managing member of Printing Press, declares that the deed did not transfer access rights to the boulevard. He characterizes the deed as only transferring a right of way to Union Gap. UGMC 9.34.030(b) recognizes that "every owner of property which abuts a controlled access arterial has the right to reasonable access to that roadway." Printing Press continued to own land immediately abutting the purchased land and north of Valley Mall Boulevard.

The city of Union Gap commenced construction of Valley Mall Boulevard following the acquisition of all needed land, and Union Gap remained the lead agency on all project phases. The total cost of the boulevard project was $21.5 million. Union Gap

contributed seven percent of the total project cost. Most funding came from the federal government. The city of Yakima contends it served as the certification acceptance agency for the project and that its duties as this agency included review and approval of all project designs, plans, specifications, utility and railroad agreements, consulting and engineering agreements, construction estimates, award and execution of construction contracts, and construction administration. Union Gap claims it entered all agreements regarding the design and construction of the arterial road.

Valley Mall Boulevard now constitutes a completed four-lane "Intermodal Connector" providing vital access between Interstate 82, lying east of Union Gap and Yakima, and the commercial, industrial and agricultural businesses to the west of the cities of Yakima and Union Gap. The boulevard extends 3.3 miles with a half mile section of its centerline aligned with the boundary between Union Gap and Yakima. The speed limit on the boulevard is 40 m.p.h. Union Gap pays all bills for street lighting. Union Gap performs boulevard striping, sweeping, maintenance, vegetation control, and snow and ice control. The Union Gap Police Department responds to calls for emergencies on the boulevard.

In 2006, the city of Union Gap approached Printing Press Properties to participate in a partnership to improve the Valley Mall Boulevard and Longfibre Road intersection. The two entities, along with Clary Properties, LLC, an owner of land to the west of Longfibre Road, reached a development agreement, pursuant to RCW 36.70B.170, to

8

recondition the intersection. Before the entry of the agreement, a wedge-shaped portion of Printing Press' land rested within the municipal boundaries of the city of Union Gap, with the remaining larger portion of Printing Press' parcel within the boundaries of the city of Yakima. We refer to the area formerly inside Union Gap limits as "the wedge." We refer to the remaining larger portion as the "eastern portion." Although the boundary between the two cities generally runs east and west, the boundary along Longfibre Road then turned and ran north and south. The wedge lies immediately to the east of Longfibre Road. We will refer to all of Printing Press land, in other words, both the wedge and the eastern portion, as the "entire tract." The property constitutes one tax parcel. Other than the wedge formerly resting in Union Gap, no reason existed to distinguish the wedge from the eastern portion of the land. Exhibit B, attached to the development agreement, assists in identifying and understanding the layout of Printing Press' land, Valley Mall Boulevard, Longfibre Road, and the Clary land. We attach the exhibit to this opinion. We also attach two overhead photographs of the area.

Yakima and Union Gap agreed to adjust the municipal boundaries so that all of the Printing Press' property would sit within the boundaries of the city of Yakima. In other words, Yakima, with the permission of Union Gap, annexed the wedge. Union Gap and Printing Press agreed to extend Longfibre Road farther south to provide greater access to Printing Press' land and to add utilities in the improved area.

On February 28, 2008, the city of Union Gap and Printing Press entered a development agreement to consummate the understanding with regard to improvement of the Longfibre Road and Valley Mall Boulevard intersection. A major question on appeal is whether the development agreement covers only the wedge formerly within Union Gap or Printing Press' entire tract. The recording cover sheet for the agreement contains a "legal description, abbreviated form" that reads:

> Legal Description (abbreviated form: i.e. lot, blk., plat or S.T.R. quarter/quarter)
> SE1/4 SW1/4 SE1/4 S. 31, T 13N, R. 18 EWM
>     Additional legal is on page _____
> Assessor's Property Tax/Parcel Account Number
> 191331-44004

CP at 602. The first page of the development agreement contains the following block:

> Grantors: (1)  PRINTING PRESS PROPERTIES, LLC
>
> Grantee: (1)  CITY OF UNION GAP
>
> Abbreviated Legal Description: SE 1/4 SW 1/4 SE 1/4 S31, TI3N, R18 EWM
>
> Complete legal description is attached as Exhibit A to this document.
>
> Assessor's Tax Parcel ID Nos.: 191331-44004

CP at 603. Exhibit A attached to the development agreement reads:

> Exhibit "A"
>
> That part of the southeast quarter of the southwest quarter of the southeast quarter of Section 31, Township 13 North, Range 18 East W.M., *lying westerly of the city limits of Yakima, Washington.*

10

CP at 612 (emphasis added). The property to the west of the Yakima limits is the wedge.

The body of the agreement declares:

RECITALS

A. Whereas, the City of Union Gap, in partnership with the Yakima County Development Association (YCDA), is seeking to facilitate the development of commercial and light industrial-zoned property in the vicinity of Ahtanum Road, Valley Mall Boulevard and Longfibre Road; and

B. Whereas, as a part of this process the City has applied for and received grant and loan funds to implement a multi-phase strategy of road, water and intersection improvements ("Phase 2 Road Improvements") to serve commercial and light industrial zoned properties; and

C. Whereas, Bud Clary Toyota of Yakima ("Clary") and PPI [Printing Press Properties] are owners of real property located at the intersection of Valley Mall Boulevard and Longfibre Road and intend to develop such properties (the "Subject Properties"); and

D. Whereas, the development of the subject Properties is facilitated by the extension of Longfibre Road and significant community benefits are derived from the further development of a traffic grid system, extension of public water services and potential employment and tax revenues derived from development;

E. Whereas, the parties to this Agreement desire to establish a framework, to the extent authorized by state law, in order to integrate and expedite the timely review, approval and construction of the proposed private development and supporting public improvements.

Now, therefore be it resolved that the parties hereby agree as follows:

AGREEMENT

1. Proposed Private Development. PPI owns or controls certain real properties located in the City of Union Gap, *commonly known as the PPI site, legally described on Exhibit "A" attached hereto and incorporated herein by this reference.* It is the intent of PPI to sell and/or develop the subject property with commercial or light industrial land uses consistent with applicable municipal development standards.

2. Amendment of Municipal Boundaries. *The PPI property is currently subject to split jurisdiction between City of Yakima and City of Union Gap.* The approximate location of the current municipal boundary is

11

set forth on attached Exhibit B. . . .  It is agreed that *the entire PPI parcel will be incorporated into the City of Yakima.*  All of the road right-of-way improvements for Longfibre Road as it extends north from Valley Mall Boulevard shall be within the jurisdiction of the City of Union Gap.

3. <u>Participation in Phase 2 Road Improvement</u>.  PPI shall participate in Longfibre Road Phase 2 Road Improvements as follows:

a. PPI shall dedicate to the City such right-of-way and slope/drainage easements that may be required to extend Longfibre Road as depicted in Exhibit C. . . .  In general terms the right-of-way will include the following:

i. The improvements will include street, sidewalk, lighting and storm drainage. . . .

ii. Accommodation of intersection improvements and signalization equipment including turn lanes necessary on Longfibre Road at the intersection with Valley Mall Boulevard.

. . . .

c. PPI shall incorporate the following access management requirements into all site development plans:

i. *PPI acknowledges that provisions of UGMC Chapter 9.34 may prohibit direct access to Valley Mall Boulevard.  Any access to the property from Valley Mall Boulevard shall be subject to municipal review and conditioning at time of project permit application.*

CP at 603-05 (emphasis added).  The parties' dispute focuses on subsection 3.c.i. of the

agreement.  We will alternatively refer to this subsection as the "access subsection" or

"subsection i."  The development agreement continues in section 3.c:

ii. The centerline of the southerly most access point from the PPI property to Longfibre Road shall be no closer than 200-feet from the south property line to the subject property.

iii. Additional access points to Longfibre Road shall be a minimum of 200-feet apart as measured centerline to centerline and must be coordinated with access points on the west side of Longfibre Road, unless otherwise approved by the Director of Public Works.

d. PPI will be responsible for and shall contribute its identified share of the costs associated with the construction of the Phase 2 Road Improvements, such estimate of project funding set forth on Exhibit D.  PPI

12

shall not be responsible for any portion of the improvement costs for extension of the City of Union Gap water main or intersection improvements (including traffic signal improvements) to Longfibre Road/Valley Mall Boulevard. . . .

. . . .

4. <u>SIED Grant and Loan Funds</u>. City has applied for and received a grant of up [to] $278,000 and loan of up to $278,000 from the Yakima County Supporting Investments in Economic Development (SIED) Board to assist in the financing of Phase 2 - Longfibre Road Improvement Projects. . . . Such improvements include approximately 600 linear foot arterial road extension north from Valley Mall Boulevard . . . ; intersection improvements and traffic signals at Valley Mall Boulevard and Longfibre Road . . . ; and water main extension (approximately 1300 LF) along the east side of the Clary property . . . . These improvements subject to conditions and provided that:

a. City shall design, build, construct, and maintain the improvements associated with the extension of Longfibre Road and the extension of the City water main in accordance with the terms and conditions of the SIED Contract . . . .

. . . .

c. The City shall consult with PPI prior to taking the following actions:

i. the approval of the plans and specifications for Schedule A of the SIED funded improvements and,

ii. Approval of the lowest responsible bid for Schedule A improvements.

. . . .

d. . . .

iv. Except as set forth above, PPI shall have no responsibility for costs, expenses or charges with respect to Phase 2—Longfibre Road Improvement Projects

e. PPI shall, within thirty (30) days following written request by the City, make a cash payment to the City for the down payment portion of the SIED funded improvements of $10,493. The failure to perform may result in the suspension or termination of any or all SIED funded activities.

. . . .

8. <u>Attorney's Fees</u>. In the event that any lawsuit is instituted by either party to this Agreement arising out of or pertaining to this Agreement, including any appeals and collateral actions relative to such

13

lawsuit, the substantially prevailing party as determined by the court shall be entitled to recover its reasonable attorney's fees, expert witness fees, and all costs and expenses incurred relative to such lawsuit from the substantially nonprevailing party, in addition to such other relief as may be awarded.

. . . .

13. Reservation of City Authority. As required by RCW 36.70B.170(4), and notwithstanding the terms of this Agreement, Union Gap reserves the right to establish and impose new or different regulations or to impose new mitigating measures to the extent required to address a serious threat to public health or safety.

CP at 605-08. Printing Press contends that the development agreement does not cover the eastern portion of its land. Union Gap claims it would not have executed the development agreement and participated in the extension of Longfibre Road and the improvements along Longfibre Road without the development agreement covering all of Printing Press' land.

In the fall of 2012, a Lowe's store proposed to move its retail location from Union Gap to Yakima. Printing Press believes that Union Gap has retaliated to render Lowe's move costly, such as thwarting access from the store directly to Valley Mall Boulevard. Union Gap does not deny the tax implications stemming from Lowe's change in locations, but denies any reprisal.

Printing Press and Lowe's entered into a contract under which Lowe's constructed a new retail store, whose footprint lies inside both the wedge and the eastern portion of the land. Under Printing Press' agreement with Lowe's, if Printing Press secures a permit for direct access of a driveway onto the boulevard, within five years of Lowe's opening

14

business, Lowe's will reimburse Printing Press for all driveway construction and permitting costs up to $170,000. Printing Press thereafter commenced steps to gain direct access to Valley Mall Boulevard.

Consistent with the development agreement, Printing Press Properties submitted permit applications to the city of Union Gap in early 2015 to construct a driveway with access onto Valley Mall Boulevard. Union Gap describes its review of that application with a declaration from the Union Gap Director of Public Works & Community Development Dennis Henne, who testified:

> Union Gap spent significant time reviewing this application and meeting with consultants to determine whether it would be safe to grant this permit and whether it met applicable highway requirements. For instance, Union Gap consulted with HLA Engineering and Land Surveying regarding safety concerns over sight, distance, and speed, and ultimately determined that the proposed project did not meet generally acceptable design practices for an Intermodal Connector and was unsafe. The American Association of State Highway and Transportation Officials (ASSHTO) Policy on Geometric Design of Highways and Streets, provide guidance to the designer by referencing a range of values for critical dimensions. The manual recommends a minimum sight distance for passing decisions on a designed 45 [m.p.h.] Rural and Urban Arterial to be 1625 (ft), more than double the sight distance of the proposed [Printing Press Properties] driveway.

CP at 240-41.

Union Gap worries about low or short sightlines on the boulevard due to undulations in the road caused by the bridge over the train tracks. Union Gap claims drivers on the boulevard that would slow or stop at Lowe's driveway could cause rear-

15

end collisions and traffic congestion. Printing Press disputes the safety concerns about access to its land from Valley Mall Boulevard and criticizes Union Gap Public Works Director Dennis Henne for lacking a professional engineer's license.

On August 25, 2015, Union Gap sent Printing Press a letter denying the access permit application. On September 15, 2015, Printing Press submitted a letter to Union Gap withdrawing its application. Printing Press chose not to appeal and subsequently submitted another application to the city of Yakima.

The city of Yakima approved two permits for Printing Press. The first permit authorizes excavation for the proposed driveway and demolition of existing boulevard improvements, including sidewalks and curbing. Yakima also issued an engineering permit to construct the driveway. Printing Press then dedicated an easement on its land to the public for the driveway. Yakima officials did not share the safety concerns expressed by Union Gap about Printing Press' land's access to Valley Mall Boulevard.

Union Gap notified Printing Press in writing that Union Gap, not Yakima, controlled access to the boulevard and that Printing Press lacked authority to construct the driveway. Nonetheless, Printing Press started construction, but stopped short of cutting curbs or sidewalks and accessing the boulevard.

PROCEDURE

Union Gap filed suit against Printing Press to obtain an injunction precluding Printing Press from cutting curbing along Valley Mall Boulevard and building a driveway

16

to access the boulevard. Union Gap asserted a cause of action for breach of the development agreement. Union Gap alleged that a Washington city may control real property it owns and a private party cannot force a city to allow direct access to a road the city owns when: (1) the private landowner lacked access to the road before the city improved the road, (2) the private landowner signed a contract that prohibited direct access onto the road, (3) the city provided, at great expense, alternative access to the private land from an adjacent public road, and (4) the city purchased the land, on which the road sits, in fee title from the private landowner. In response, Printing Press emphasized that its land lies entirely inside the jurisdiction of the city of Yakima and Yakima holds authority to determine access from the north of the boulevard. Printing Press also contended that Union Gap's failure to appeal, under the Land Use Petition Act (LUPA), chapter 36.70C RCW, the city of Yakima's approval of the grade and access permits to construct the driveway bars this suit as untimely.

Union Gap and Printing Press filed cross-motions for summary judgment. By its motion, Union Gap requested an order declaring that Printing Press lacked a legal right to open an access driveway from its property to Valley Mall Boulevard. Union Gap also sought an injunction precluding Printing Press from cutting the curb along the boulevard. Printing Press, by its summary judgment motion, sought dismissal of all of Union Gap's claims.

The trial court granted Printing Press' motion. The trial court concluded that Union Gap could not regulate outside its jurisdiction and that the development agreement covered only the wedge. Pursuant to the parties' contract, the trial court granted Printing Press reasonable attorney fees and costs as the prevailing party.

## LAW AND ANALYSIS

Under familiar principles of summary judgment jurisprudence, this reviewing court reviews an order for summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We must determine whether "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Parkin v. Colocousis*, 53 Wn. App. 649, 653, 769 P.2d 326 (1989) (quoting CR 56(C)). Both parties sought summary judgment before the trial court. Neither party contends disputed facts preclude a grant of summary judgment.

### Land Use Petition Act

Printing Press asks that this court deny review of the merits of the city of Union Gap's appeal. Printing Press observes that Union Gap failed to appeal the city of Yakima's decision to issue permits for the driveway, and, thus, Printing Press asserts that Washington's LUPA bars this suit. Because of the nature of Union Gap's suit, we disagree.

18

LUPA pertains to judicial review of all land use decisions with some exceptions noted in the statute. RCW 36.70C.010-.030; *Chelan County v. Nykreim*, 146 Wn.2d 904, 916, 52 P.3d 1 (2002). In enacting LUPA in 1995, the Washington Legislature determined that LUPA "shall be the exclusive means of judicial review of land use decisions," with certain specific exceptions. RCW 36.70C.030(1); *Chelan County v. Nykreim*, 146 Wn.2d at 917 (emphasis and footnote omitted).

LUPA bars a land use petition, and the court may not grant review of the petition unless the petitioner files the petition with the court within twenty-one days of the issuance of the land use decision. RCW 36.70C.040(3); *Asche v. Bloomquist*, 132 Wn. App. 784, 799, 133 P.3d 475 (2006). LUPA's statute of limitations begins to run on the date an agency issues a land use decision, and even illegal decisions must be challenged in a timely, appropriate manner. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 407-08, 120 P.3d 56 (2005). Union Gap never filed an appeal, let alone a timely appeal, of the permits issued by Yakima to Printing Press.

We agree that the city of Yakima's issuance to Printing Press of the excavation and engineering permits constituted land use decisions. A "land use decision" includes:

> a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
> (a) An *application* for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used . . . .
>  . . . .

19

> (c) The *enforcement by a local jurisdiction of ordinances* regulating the improvement, development, modification, maintenance, or use of real property.

RCW 36.70C.020(2) (emphasis added). We hold, however, that LUPA does not control Union Gap's suit.

The city of Union Gap does not directly challenge the issuance of the permits by Yakima. Union Gap instead seeks to enforce its contract rights. If a cause of action arises independently of the relevant land use petition, the claim is not barred. *Asche v. Bloomquist*, 132 Wn. App. at 800 (2006). Claims that do not depend on the validity of a land use decision are not barred. *Asche v. Bloomquist*, 132 Wn. App. at 800.

Printing Press labels Union Gap's suit "a collateral attack" on a land use decision. Printing Press claims that the current lawsuit would be unnecessary but for the issuance of the permits. According to Printing Press, barring Union Gap's suit as untimely would serve LUPA's and Washington's stated policy of favoring administrative finality in land use decisions. *Samuel's Furniture, Inc. v. Department of Ecology*, 147 Wn.2d 440, 458, 54 P.3d 1194 (2002).

Printing Press contends that *Holder v. City of Vancouver*, 136 Wn. App. 104, 147 P.3d 641 (2006) and *Asche v. Bloomquist*, 132 Wn. App. 784 (2006) compel a conclusion that Union Gap's litigation arises directly from the permits issued by the city of Yakima and thereby LUPA controls. In *Asche*, a neighboring property owner failed to file a LUPA appeal related to the issuance of a county building permit for residential

construction on an adjoining property. Printing Press emphasizes that the court, in *Asche*,

recognized the interests of an adjacent property owner and determined that injunctive

relief was available through a LUPA appeal. Nevertheless, we distinguish *Asche* because

the neighboring property owner challenged the issuance of the permit on the basis that the

county violated its zoning code when issuing the permit. The property owner did not

assert any right under a contract or independent of the county code.

In *Holder v. City of Vancouver*, a property owner challenged the city of

Vancouver's hearing examiner's order holding that he violated a city ordinance by

parking and storing vehicles on unimproved surfaces. The court refused to entertain the

suit because the property owner abandoned any claim under LUPA and LUPA controlled

the challenge to the hearing examiner's decision.

*Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 352 P.3d 807 (2015) bears

more relevance to Union Gap's suit. A developer alleged that Kitsap County negligently

delayed the issuance of building permits. The county argued that its permitting actions

could be challenged only under LUPA and the developer's failure to appeal under LUPA

barred the suit. This court agreed with the developer that LUPA did not bar its action

because it sought monetary compensation rather than a modification of a land use

decision.

If Union Gap limited its claims to an argument that the city of Yakima lacked

authority to issue the permits to Printing Press or that Yakima violated its code when

21

issuing the permits, we might agree with Printing Press. Nevertheless, Union Gap's suit

rises independently of the Yakima permits. Union Gap relies on its contract with Printing

Press, which contract the parties entered outside of and before the city of Yakima's

permit issuances. If Printing Press started construction on the driveway in the absence of

any permit, Union Gap would have filed this same suit alleging breach of contract under

the parties' development agreement. Printing Press contravenes the intent of LUPA by

using the act as an excuse to shirk its contractual obligations under the development

agreement with Union Gap.

Printing Press underscores that Union Gap seeks to enjoin the exercise of the

rights granted by the Yakima permits. Nevertheless, Union Gap does not seek to enjoin

enjoyment of the permits because of any fault in the issuance of the permits, but because

Printing Press' claimed rights coincide with the rights Printing Press surrendered under

the development agreement.

We analogize to a hypothetical situation under which a neighborhood contains

restrictive covenants prohibiting the harboring of large commercial animals. Harry

Smith, who resides in the neighborhood, seeks and obtains a variance to the city zoning

code, which variance permits his building of a cow pen. Smith intends to raise beef cattle

for sale to others. Smith's neighbor, Betty Ross, does not appeal the issuance of the city

permit. Instead Ross sues Smith for violating the restrictive covenants. LUPA should

not bar the enforcement of private agreements concerning the use of land. Ross does not challenge the city's authority to issue the permit.

*The Development Agreement*

We now address the merits of city of Union Gap's appeal. Union Gap asserts numerous arguments. Union Gap contends that Printing Press would breach the development agreement by cutting access to Valley Mall Boulevard from its land. Union Gap maintains that, apart from the development agreement, it possesses authority as the landowner, under which the boulevard runs, to preclude access to the boulevard. Union Gap posits that the deed from Printing Press to the city reserved no access rights or easement allowing entrance to the boulevard. Union Gap argues that the city of Yakima assigned Union Gap the right to control access to the boulevard even from property located inside the city limits of Yakima.

In response to Union Gap's appeal, Printing Press contends that Union Gap lacks regulatory authority to preclude access to the boulevard. Printing Press also argues that any prohibition contained in the development agreement to access Valley Mall Boulevard concerned only the wedge and not the eastern portion. Printing Press wishes to place the access point to Valley Mall Boulevard inside the eastern portion. Printing Press also contends that any prohibition on access to the boulevard is precatory, not mandatory, in nature. Printing Press furthermore argues that the development agreement could not apply to its property because a city may only enter a development agreement for land

23

inside its city limits.  Finally, Printing Press asserts that, as an abutting landowner, it is entitled to access to West Valley Mall Boulevard and the city of Yakima authoritatively granted it access.

We hold that the development agreement between the city of Union Gap and Printing Press precludes Printing Press direct access to the boulevard.  Therefore, we do not address Union Gap's other contentions.

Union Gap and Printing Press signed a development agreement seven years after Printing Press conveyed the subject land to Union Gap for Valley Mall Boulevard. Union Gap contends that the agreement grants it the prerogative to deny access to the boulevard from Printing Press land.  We repeat the access subsection or subsection i that controls the appeal:

> i.  PPI acknowledges that provisions of UGMC Chapter 9.34 *may* prohibit direct access to Valley Mall Boulevard.  Any access to *the property* from Valley Mall Boulevard *shall* be subject to municipal review and conditioning at time of project permit application.

CP at 605 (emphasis added).  Union Gap further contends that section i encompasses Printing Press' entire tract.

Printing Press argues that the parties intended the development agreement, particularly the access subsection, to govern only the wedge portion originally located within Union Gap City limits.  Printing Press also contends that the language of the access subsection portends the possibility of granting of some access because the word

24

"may," preceding the word "prohibit," does not afford unlimited control. Printing Press

contends the word "may" recognizes some uncertainty as to whether Union Gap has legal

authority to deny access to Valley Mall Boulevard outside its jurisdiction and that, in fact,

Union Gap lacks such authority.

Our task is to discern the intent of the parties to the development agreement.

*Kelley v. Tonda*, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). This task entails our

selecting principles of contract construction that helps us best discern the intent of the

parties rather than imposing a preferable outcome. Neither party asks us to construe the

contract against the other party on the basis that the other party drafted the language.

Neither party forwards any conversations during the negotiations or drafting of the

agreement that would assist in construing the contract.

Union Gap alleges it would never have entered into the development agreement,

nor have ameliorated Longfibre Road, if it knew that Printing Press intended to disregard

the contract and construct the driveway over Union Gap's objection. We find this

testimony unhelpful because Union Gap provides no evidence that it stated this

understanding to Printing Press. We do not consider a party's unexpressed subjective

intent. *Grant County Port District No. 9 v. Washington Tire Corp.*, 187 Wn. App. 222,

233, 349 P.3d 889 (2015).

We principally rely on three principles of contractual interpretation. First, a court

will view the contract as a whole, interpreting particular language in the context of other

contract provisions. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). Second, courts must read each contract as an average person would read it without giving it strained or forced meaning. *Mid-Century Insurance Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995). Third, we consider the actions of the parties subsequent to the signing of the contract as evidence of intent at the time of signing. *Higgins v. Stafford*, 123 Wn.2d 160, 165, 866 P.2d 31 (1994); *In re Estate of Wimberley*, 186 Wn. App. 475, 505, 349 P.3d 11 (2015).

We first decide if the access subsection covers the entire tract, including the eastern portion. The development agreement employs various terms when mentioning Printing Press' real estate. The ever changing words both complicate our inquiry and provide clues in answering this question.

The recording cover sheet does not use any term for Printing Press' land other than "legal description, abbreviated form." CP at 403. The legal description on the cover sheet presumably describes the entire tract. The first page of the development agreement also contains no term for the land and repeats the same abbreviated legal description. Nevertheless, the first page adds the sentence: "*Complete* legal description is attached as Exhibit A to this document." CP at 404. Then, to Printing Press' advantage, Exhibit A reads:

> That part of the: southeast quarter of the southwest quarter of the southeast quarter of Section 31, Township 13 North, Range 18 East W.M., *lying westerly of the city limits of Yakima, Washington.*

CP at 413 (emphasis added). The wedge was then Printing Press' only property west of the Yakima limits.

Printing Press astutely argues that the attached legal description shows the intent to limit coverage of all provisions of the development agreement to the wedge, particularly when the cover page refers to this legal description as the "complete" description. Nevertheless, the first page of the agreement does not explicitly limit all of the terms of the development agreement to a select portion of Printing Press' land or, in its body, define any term related to the land as limited to the wedge. For this reason and because the development agreement loosely employs terms related to Printing Press' land, we disagree with Printing Press.

The introductory paragraph to the development agreement indicates that the parties entered the agreement for the purposes of establishing standards for "development of PPI [Printing Press] property." CP at 404. The agreement nowhere expressly defines "PPI" property. No evidence suggests that Printing Press only sought to develop the wedge. Instead, the wedge and the eastern portion are not distinct tracts and constitute one tax parcel. Lowe's use of both the wedge and the eastern portion hints that Printing Press sought, at the time of the development agreement, to develop its entire tract.

Recitals paragraphs C and D reads:

C. Whereas, Bud Clary Toyota of Yakima ("Clary") and PPI are owners of real property located at the intersection of Valley Mall Boulevard

27

and Longfibre Road and intend to develop such properties (the "Subject Properties"); and

D. Whereas, the development of the Subject Properties is facilitated by the extension of Longfibre Road and significant community benefits are derived from the further development of a traffic grid system, extension of public water services and potential employment and tax revenues derived from development;

CP at 405. Finally, the development agreement imposes a term for property in quotation marks. The "subject properties" consists of the land owned by Clary and Printing Press at the intersection of Longfibre Road and Valley Mall Boulevard that the respective landowners intend to develop. Although the wedge is closer than the eastern portion to the proposed intersection of Longfibre Road and Valley Mall Boulevard, the entire tract constituted one unified parcel when the parties signed the development agreement. The eastern portion also constitutes land owned by Printing Press at the intersection, when we consider Printing Press' property as a whole. More importantly, as already indicated, Printing Press intended to develop its entire tract.

Paragraph one of the body of the agreement declares:

1. <u>Proposed Private Development</u>. PPI owns or controls certain real properties located in the City of Union Gap, *commonly known as the PPI site, legally described on Exhibit "A" attached hereto and incorporated herein by this reference.* It is the intent of PPI to sell and/or develop the subject property with commercial or light industrial land uses consistent with applicable municipal development standards.

CP at 405 (emphasis added). Again, Exhibit A legally describes only the wedge. But we note that paragraph one refers to the wedge as the PPI "site," not the "property," a

28

nomenclature that suggests that "property," when used in the agreement includes land more than the wedge. The second sentence in paragraph one could be read to imply that the word "site" coincides in meaning with the word "subject property." Nevertheless, PPI intended to develop the eastern portion for commercial uses. Lowe's is a commercial use.

We move to paragraph 2 of the agreement, which reads:

> 2. <u>Amendment of Municipal Boundaries</u>. *The PPI property is currently subject to split jurisdiction between City of Yakima and City of Union Gap.* The approximate location of the current municipal boundary is set forth on attached Exhibit B. . . . It is agreed that *the entire PPI parcel* will be incorporated into the City of Yakima. All of the road right-of-way improvements for Longfibre Road as it extends north from Valley Mall Boulevard shall be within the jurisdiction of the City of Union Gap.

CP at 405 (emphasis added). This paragraph strongly intimates that the term "property" includes the entire tract and the development agreement covers the entire tract. The first sentence mentions that the "PPI property" lies in both the city of Yakima and the city of Union Gap. At the time of the development agreement, only the eastern portion lay inside Yakima. In the third sentence, the term "parcel" is used for the first time. The paragraph does not refer to the PPI "site" as described in Exhibit A. The parties agree, in the third sentence, to place the "entire PPI parcel" inside the jurisdiction of Yakima. Thus, the agreement necessarily addresses the status of Printing Press' entire tract.

Important to our ruling is Exhibit B to the development agreement. The exhibit is a map of the area. The map imposes the label "PPI Property" inside the eastern portion.

This label establishes an intent to consider PPI's property, for purposes of the development agreement, as the entire tract.

We come now to the critical subsection 3, which declares:

> c.  PPI shall incorporate the following access management requirements into all site development plans:
> i.  *PPI acknowledges that provisions of UGMC Chapter 9.34 may prohibit direct access to Valley Mall Boulevard.  Any access to the property from Valley Mall Boulevard shall be subject to municipal review and conditioning at time of project permit application.*

CP at 406 (emphasis added).  The first sentence recognizes the potential of no direct access to Valley Mall Boulevard.  The language does not suggest any section of the entire tract automatically receives direct access.  If the parties wished the access subsection to deny access only from the wedge, the parties could have referred to "the PPI site described on Exhibit A" as it did in paragraph one of the agreement.  According to the second sentence, Union Gap must approve "any access to *the property* from Valley Mall Boulevard."  CP at 406 (emphasis added).  Throughout the development agreement, the term "property" typically refers to the entire tract.  Exhibit B particularly labels the east land as "PPI Property."  Conceivably "municipal review" in the last paragraph could refer to review by the city of Yakima, but we consider such a construction strained since the first sentence already refers to that portion of the Union Gap Municipal Code establishing Union Gap's review of plans for access to an arterial.

The remainder of section 3c of the development agreement details access points

30

from "PPI Property" to Longfibre Road. No language in the development agreement discloses details for any access to Valley Mall Boulevard. If Printing Press retained some right to direct access to Valley Mall Boulevard, one might expect the parties to delineate that important right, together with the particulars of the right, in the development agreement.

Other reasons bolster our decision that the development agreement precluded direct access from the eastern portion to Valley Mall Boulevard without a permit from Union Gap. The eastern portion lies closer to the bridge over the railroad tracks than the wedge. More reason exists to deny access from the eastern portion. Printing Press has not forwarded any reason to permit access to Valley Mall Boulevard from the eastern portion, but not the wedge.

The development agreement's principal, if not sole, purpose was to improve access to Printing Press' entire tract by improving Longfibre Road. Opening another portion of the entire tract to access Valley Mall Boulevard conflicts with this purpose.

Finally, in construing the development agreement, we note that Printing Press first applied to Union Gap for a permit allowing direct access to Valley Mall Boulevard before Printing Press sought a permit from the city of Yakima. Thus, as illustrated by its subsequent actions, Printing Press also read the development agreement to apply to its entire tract, not only the wedge.

We next examine whether access subsection, subsection 3.c.i., otherwise permits

31

Union Gap to deny Printing Press' eastern portion access to Valley Mall Boulevard. According to Printing Press, the development agreement simply recognizes that UGMC Chapter 9.34 "may prohibit" direct access to Valley Mall Boulevard. CP at 605. Whether in fact the Union Gap Municipal Code actually *can* prohibit access is a different question. The phrase "may prohibit" only acknowledges the possibility of Union Gap's ability to prohibit access and to determine whether that possibility can come into fruition requires an examination as to the powers of Union Gap to act outside its jurisdiction.

The only law cited by Printing Press for the proposition that Union Gap cannot extend the provisions of its municipal code to land in the city of Yakima is Washington Constitution article XI, § 11. Article XI, § 11 declares:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

Printing Press cites no case decided under the constitutional provision, let alone a case that suggests that Union Gap violates this constitutional section under the appealed circumstances.

We observe that Union Gap does not seek to impose its municipal code on land outside its city limits without permission from the landholder. By signing the development agreement and for valuable consideration, Printing Press consented to the application of the code provisions. In this sense, Union Gap and Printing Press merely incorporated by reference the standards of the municipal code as part of the contract

terms.  Union Gap does not seek to enforce a regulation outside its limits.  The city instead seeks to enforce a contractual term.  Printing Press cites no case that precludes a city and a landowner outside the city limits from contracting to apply a municipal code section to the contracting relationship.

*Wilson v. City of Mountlake Terrace*, 69 Wn.2d 148, 417 P.2d 632 (1966) minimally supports our position.  Mountlake Terrace adopted a city ordinance authorizing the insertion of a fluoride chemical into the city's potable water supply.  A.P. Wilson and others resided outside the city limits.  Nevertheless, due to a connection in pipes between the city's water system and the water district system that served Wilson and his neighbors, residents outside city limits would also receive fluoridated water.  Wilson and others sued and alleged that the city sought to exercise its police power over land outside city limits.  The Supreme Court disagreed.  The court noted that the city did not exercise its police power over land outside city limits, but instead the fluoridation resulted from a contract between the city and the water district.  Wilson's receipt of fluoridated water was incidental to the city's exercise of its police power in furnishing fluoridated water to its inhabitants.

Union Gap's prohibition of cuts along Valley Mall Boulevard results from a contract with Printing Press, not necessarily the assertion of police power jurisdiction outside city limits.  Union Gap seeks to exercise its police power over Valley Mall Boulevard, a major thoroughfare that passes in part through its city limits.  Printing Press'

33

inability to gain direct access to the arterial is incidental to Union Gap's promotion of public safety of its residents and others traversing the boulevard.

Finally, Printing Press argues that Union Gap lacked statutory authority to enter the development agreement, at least to the extent the agreement covers the eastern portion of land. Printing Press relies on RCW 36.70B.170, the statute that authorizes a city to enter a development agreement. The statute reads, in pertinent part:

> A local government may enter into a development agreement with a person having ownership or control of real property within its jurisdiction. A city may enter into a development agreement for real property outside its boundaries as part of a proposed annexation or a service agreement.

RCW 36.70B.170(1). Printing Press highlights that its eastern portion lies outside city limits.

Printing Press' argument ignores some critical facts. First, at the time of the execution of the development agreement, its property lay in part inside the city limits of Union Gap. Yakima later annexed the wedge, which was not a distinct parcel at the time Printing Press signed the agreement. Printing Press cites no law supporting a conclusion that a city cannot enter into a development agreement that covers an entire tract of land, part of which lies within city limits and part which lies outside city limits. Printing Press cites no legal authority that the development agreement, or a paragraph thereof, becomes void if the property leaves the city limits after execution of the agreement.

34

REMEDY

As part of its summary judgment motion, Union Gap requested that the trial court enter a declaration that Printing Press would violate the development agreement by building the driveway and an injunction enjoining Printing Press from constructing the driveway on its land. Because the trial court granted Printing Press a summary judgment dismissing Union Gap's complaint, the trial court did not address any remedies. Union Gap asks for injunctive and declaratory relief on appeal. In its responding appeal brief, Printing Press does not address Union Gap's request for an injunction or declaratory order.

Under Washington's Uniform Declaratory Judgments Act, chapter 7.24 RCW, the court may enter a declaratory order when there is a justiciable controversy: (1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive. *Diversified Industries Development Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). We conclude that this lawsuit presents an actual, present and existing dispute between Union Gap and Printing Press regarding Valley Mall Boulevard access. The parties hold genuine and opposing interests, which are direct and substantial, regarding the partial demolition of the curb

35

along Valley Mall Boulevard.  The cut in the curb and resulting traffic would damage

Union Gap's property and conflict with Union Gap's plans and safety concerns.  Any

judicial determination of the parties' rights and obligations under the development

agreement will be final and conclusive.

Under RCW 7.24.080, a court possesses authority, in a declaratory judgment

action, to issue further relief in addition to entering a declaratory judgment.  That relief

includes a permanent injunction.  *Ronken v. Board of County Commissioners of*

*Snohomish County*, 89 Wn.2d 304, 311, 572 P.2d 1 (1977).  A court may issue a

permanent injunction to prevent a trespass.  *Hedlund v. White*, 67 Wn. App. 409, 418,

836 P.2d 250 (1992).  An injunction is appropriate to prevent damage to real property.

*Vander Vate v. Watson*, 19 Wn.2d 68, 71, 140 P.2d 964 (1943).  We agree with Union

Gap that the law affords it declaratory and injunctive relief.

Union Gap seeks a prohibition against Printing Press constructing its driveway.

We modify this request.  Printing Press may build whatever driveway it wishes on its

land consistent with Yakima's regulations.  But Printing Press may not cut the curb or

sidewalks along Valley Mall Boulevard or gain direct access from its land to the

boulevard.

ATTORNEY FEES

The development agreement affords the prevailing party reasonable attorney fees

and costs.  The trial court awarded Printing Press reasonable attorney fees and costs on

36

entry of the summary judgment order favoring Printing Press. We reverse the award of reasonable attorney fees and costs to Printing Press. We grant Union Gap reasonable attorney fees and costs on appeal and for fees incurred before the superior court.

CONCLUSIONS

We reverse the summary judgment order favoring Printing Press and grant judgment to Union Gap on its contract claim. We remand to the superior court to enter an injunction precluding Printing Press from cutting the curb or sidewalks of Valley Mall Boulevard or gaining direct access from its land to the boulevard. We also remand to the superior court to determine the amount in reasonable attorney fees and costs to be awarded Union Gap as the prevailing party and for fees incurred at both the trial court and appeals court level.

Fearing, J.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Siddoway, J.

Pennell, J.

Pennell, J.



# EXHIBIT B

Parcel Lot lines are f... ...ity. Do not use for...

Copyright (C) 2004
This map was derived from
County Carroll accept respon...
Therefore there are no war...

**YAKIMA COUNTY**
GEOGRAPHIC INFORMATION SERVICES

Union Gap

PPI/Douglas
Boundary Adjustment

EASTERN
PORTION

PPI Property

→ VALLEY MALL BLVD.

City of Yakima

Douglas Property

Lotzbier Road

WEDGE LOWES

CLARY

LONGFIBRE ROAD IMPROVEMENTS

City of Union Gap

LOT 4, 2:13

**34740-1   Amended 000414**





Imagery ©2017 Google, Map data ©2017 Google    200 ft